

1997 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-14-1997

# United States v. Wilson

Precedential or Non-Precedential:

Docket 95-7245

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1997

Recommended Citation

"United States v. Wilson" (1997). *1997 Decisions.* Paper 40.
http://digitalcommons.law.villanova.edu/thirdcircuit_1997/40

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1997 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 95-7245

———————

UNITED STATES OF AMERICA

vs.

DAMON J. WILSON

Appellant.

———————

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

(D.C. Criminal No. 94-cr-00062)

———————

ARGUED APRIL 25, 1996

BEFORE: BECKER, NYGAARD and LEWIS, Circuit Judges.

(Filed February 14, 1997)

———————

Kenneth E. Fink (ARGUED)
Ferry, Joseph & Fink
824 Market Street, Suite 601
Post Office Box 1351
Wilmington, DE  19899

Attorney for Appellant

Colm F. Connolly (ARGUED)
Office of the United States Attorney
Chemical Bank Plaza, Suite 1100
1201 Market Street
Post Office Box 2046
Wilmington, DE  19899-2046

Attorney for Appellee

_____

OPINION OF THE COURT
_____

LEWIS, Circuit Judge.

This is an appeal from the imposition of the mandatory minimum sentence for possession with intent to distribute a controlled substance.  The district court found that the defendant's possession of a firearm in connection with prior drug dealing activities precluded the application of the Safety Valve Provision of the Sentencing Guidelines.  For the reasons which follow, we conclude that the district court was correct and will affirm the sentence imposed.

I.

In mid-September, 1994, Damon J. Wilson was arrested, charged and pleaded guilty to one count of possession with intent to distribute over 50 grams of cocaine base (i.e., crack).  See 21 U.S.C. §§ 841(a)(1) and (b)(1)(A).  The government initially recommended to the district court that it sentence him in accordance with § 5C1.2 (the "Safety Valve Provision") of Chapter Five of the United States Sentencing Guidelines (the

2

"Guidelines") codified at 18 U.S.C. § 3553(f).[1]  The government later reversed its position and argued that Wilson was ineligible for the Safety Valve Provision.

Under this provision, a district court may depart from the minimum mandatory guideline range when calculating a defendant's sentence if five criteria are met.[2]  The issue

1.    Because Wilson was sentenced while the 1994 edition of the Guidelines was in effect, we will rely on that edition throughout our discussion.  See United States v. Cherry, 10 F.3d 1003 (3d Cir. 1993) (sentencing courts must generally apply the Guidelines in effect at the time of sentencing); 18 U.S.C. § 3553(a)(4).

2.    In particular, § 3553(f) provides that:

>    Notwithstanding any other provision of law, in the case of an offense under section 401, 404 or 406 of the Controlled Substance Act . . . , the court shall impose a sentence pursuant to guidelines promulgated by the United States Sentencing Commission . . . without regard to any statutory minimum sentence, if the court finds at sentencing, after the Government has been afforded the opportunity to make a recommendation, that --
>
>    (1)  the defendant does not have more than 1 criminal history point, as determined under the sentencing guidelines;
>
>    (2)  the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;
>
>    (3)  the offense did not result in the death or serious bodily injury to any person;
>
>    (4)  the defendant was not an organizer, leader, manager, or supervisor of others in the offense, as determined under the sentencing guidelines and was not engaged in a continuing criminal enterprise, as defined in 21 U.S.C. § 848; and
>
>    (5)  not later than the time of the sentencing hearing, the defendant has

3

presented at sentencing was whether Wilson had satisfied one of these criteria, namely § 5C1.2(2), which requires the defendant to establish that he or she did not possess a firearm in connection with the offense.[3] See, e.g., United States v. Ajugwo, 82 F.3d 925, 929 (9th Cir. 1996) (noting that although there is no legislative comment on the issue, courts have placed the burden of proof under the Safety Valve Provision on the defendant). The commentary to the Safety Valve Provision defines "offense" as "the offense of conviction and all relevant conduct." U.S.S.G. § 5C1.2 comment. (n.3).

After conducting three sentencing hearings, the district court concluded that Wilson had possessed "a firearm in connection with the offense. In connection meaning in connection with his drug enterprise and gun enterprise that he was running

(..continued)
> truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan, but the fact that the defendant has no relevant or useful other information to provide or that the Government is already of aware of the information shall not preclude a determination by the court that the defendant has complied with this requirement.

3. Congress did not indicate whether the government or a defendant should bear the burden of proving that the "safety valve" criteria have been met. In our view, this burden properly should fall upon the defendant because the provision is specifically designed to benefit defendants by allowing district courts to impose a sentence below the mandatory minimum under certain circumstances. We note, however, that the government bears the initial burden of proving that prior conduct by a defendant falls within the scope of "relevant conduct" for purposes of determining the applicability of the Safety Valve Provision.

in Wilmington . . ." from May, 1994 until his arrest in September, 1994. Sentencing Hearing Transcript, Appellant's Appendix at A-202. Accordingly, it declined to apply the Safety Valve Provision of the Guidelines and instead sentenced Wilson to the 10-year minimum mandatory term of imprisonment.

The district court's conclusion was based on the following evidence.

Wilson admitted in the Pre-Sentence Report (PSI) that he dealt drugs in May and June of 1994. According to the Probation Officer, Wilson "candidly explained how he became involved in the sale of drugs, and how his involvement `escalated' over the course of the year prior to his arrest for the instant offense." PSI at ¶ 12. Wilson further stated to the Probation Officer that "there were times that he wanted to `chill out' and stop selling drugs, but he felt extremely pressured by the person for whom he sold drugs to `stay in the game.'" Id. He even expressed relief when he was apprehended because he was hurting people, but in order to stop he would have been putting his own life in jeopardy. The foregoing suggests that he was continuing to sell drugs between May and June and September of 1994, when he was arrested in the instant case. He also admitted to supervising others in selling drugs in the vicinity of the corner of Fourth and Broom in Wilmington, Delaware over the course of that year. Witnesses testified that Wilson had the reputation of being a drug dealer at that location. When arrested in September on the corner of Third and Broom, he possessed both cocaine and marijuana.

5

Wilson stated that he moved from his mother's home because of his involvement in the sale of illegal drugs and the potential danger this could cause to his family, specifically his two younger brothers. Coy Haynes, Sean Joyce and Theodore Marek admitted that at around the same time, Wilson arranged for them to purchase guns for him. According to their testimony, from May 6 to May 23, 1994, Wilson purchased eleven guns for himself and those who worked for him selling drugs. On June 14, 1994, he purchased three guns and attempted to purchase more. He made another attempted purchase at some time before July 4, 1994. According to Joyce, Wilson attempted to initiate a cocaine-for-guns transaction and was possibly involved in gun sales to buyers in New York State.

The district court also considered that Wilson's September, 1994, arrest was not his first encounter with the law. He had been arrested in June, 1994, for possession of a Tec .22 with an obliterated serial number, a gun meeting the description of one of those bought by Wilson on May 6. He was never charged in connection with that offense, the case having been nol prossed for reasons not apparent from the record. He told investigators that he did not carry a weapon after the June arrest; however, those who worked for him continued to carry weapons and provided Wilson with protection.

## II.

The question in this appeal is whether the district court erred in concluding that Wilson did not qualify for sentencing under the Safety Valve Provision because he possessed

6

a firearm in connection with the offense.  The court's finding that the "safety valve" did not apply was grounded in its belief that Wilson's past drug dealing constituted conduct relevant to the offense of conviction and that Wilson's involvement with guns was connected to this relevant conduct.  Our discussion will focus upon the validity of these premises.

We exercise appellate jurisdiction over this case pursuant to 18 U.S.C. § 1291.[4]  We review for clear error the district court's factual findings regarding Wilson's past involvement with drugs.  See United States v. Hamilton, 929 F.2d 1126, 1130 (6th Cir. 1991).  By contrast, "[w]hether the facts found by the district court warrant application of a particular guideline provision is a legal question and is to be reviewed de novo."  See United States v. Partington, 21 F.3d 714, 717 (6th Cir. 1994).  Accordingly, our review of the district court's ultimate refusal to invoke the Safety Valve Provision is plenary.

A.

Based upon the government's submissions, we believe that the following, taken from its Supplemental Brief, represents the clearest articulation of its position in this case:

> [t]he government does not argue and the record evidence does not support a finding that Wilson's past involvement with firearms occurred on a sufficiently regular basis or was

_____

4.    The government contends that we lack appellate jurisdiction over this case.  See Appellee's Br. at 1.  The government is mistaken.  The district court's refusal to invoke the "safety valve" provision in this instance was not based upon an exercise of its discretion, but upon its interpretation of a Guidelines provision.  See Sentencing Hearing Transcript, Appellant's Appendix at A-198 ("I [the district court] think we're involved here with a question of statutory interpretation.").

7

> sufficiently similar to the instant drug
> offense of conviction to constitute "relevant
> conduct." Wilson's past drug dealings,
> however, were sufficiently regular and had
> sufficient temporal proximity and similarity
> to the instant offense to constitute relevant
> conduct; and because Wilson possessed
> firearms during this relevant conduct of drug
> dealing, he fails to satisfy 18 U.S.C.
> § 3553(f)(2).

Government's Supplemental Letter Brief at 1 (emphasis removed).

Essentially, the government argues that Wilson's prior drug

dealing is "relevant conduct" because it was part of the "same

course of conduct" and "common scheme or plan" as his offense of

conviction. See id. at 3.

Wilson argues that his prior drug dealing is not

relevant conduct and even if it were, the connection between his

possession of a firearm and his offense is too tenuous for the

purposes of the Safety Valve Provision.

### B.

The Safety Valve Provision does not define "relevant

conduct" for its own purposes, and we must look elsewhere in the

Guidelines to understand how it is used there. See U.S.S.G.

§ 5C1.2. However, section 1B1.3 (the "Relevant Conduct

Provision"), provides guidance in delineating the scope of

"relevant conduct" for the purposes of the Safety Valve

Provision. See United States v. Smith, 991 F.2d 1468, 1471 (9th

Cir. 1993).

"Relevant conduct" for an offense that requires the

grouping of multiple counts, singly undertaken, includes "all

acts and omissions committed, aided, abetted, counseled,

8

commanded, induced, procured, or willfully caused by the defendant . . . that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense . . .," U.S.S.G. § 1B1.3(a), and "all acts and omissions described . . . [above] . . . that were part of the same course of conduct or common scheme or plan as the offense of conviction."  U.S.S.G. § 1B1.3(a)(2).

The commentary defines the "same course of conduct" as those offenses that "are sufficiently connected or related to each other as to warrant the conclusion that they are part of a single episode, spree, or ongoing series of offenses." U.S.S.G. § 1B1.3 comment. (n.9(B)).  It defines a "common scheme or plan," as a criminal plan in which two or more offenses are "substantially connected to each other by at least one common factor, such as common victims, common accomplices, or similar modus operandi." U.S.S.G. § 1B1.3 comment. (n.9(A)).  Although there is substantial overlap between the two terms, the former envelops a greater sphere of activity than the latter.

The commentary provides a three-prong test to determine whether offenses are part of the same course of conduct.  The sentencing court must look to "the degree of similarity of the offenses, the regularity (repetitions) of the offenses, and the time interval between offenses." U.S.S.G. § 1B1.3 comment. (n.9) (adopting the three prong test from United States v. Hahn, 960 F.2d 903, 910 (9th Cir. 1992), effective November 1, 1994).  Even if one factor is absent, "a stronger presence of at least one of

9

the other" factors may be sufficient to find the same course of conduct. U.S.S.G. § 1B1.3 comment. (n.9); see also Hahn, 960 F.2d at 910 (same); United States v. Hill, 79 F.3d 1477, 1484 (6th Cir. 1996), cert. denied, 117 S. Ct. 158 (while there is no bright line rule as to what constitutes the same course of conduct, a court may look to the relative strengths of the three prongs in reaching its conclusion).

In finding that offenses satisfy the temporal proximity prong, courts have considered offenses that precede the offense of conviction by as much as 17 months. United States v. Richards, 27 F.3d 465, 468-69 (10th Cir. 1994); see also United States v. Santiago, 906 F.2d 867, 873 (2d Cir. 1990) (affirming ruling that drug sales occurring eight months before drug offense of conviction were relevant conduct); United States v. Moore, 927 F.2d 825, 828 (5th Cir.), cert. denied, 502 U.S. 871 (1991) (affirming ruling that drug sales occurring five months before drug offenses of conviction were relevant conduct).

In evaluating offenses under the similarity prong, a court must not do so at such "a level of generality that would render worthless the relevant conduct analysis." Hill, 79 F.3d at 1483; see also United States v. Maxwell, 34 F.3d 1006, 1011-12 (11th Cir. 1994). In determining similarity in a drug case, a court may consider the similarity of the offenses (i.e., two sales of cocaine as opposed to a sale of cocaine and a sale of LSD); the quantities involved; the location of the offenses; the identity of the supplier, buyer or other participants. See Hill, 79 F.3d at 1484-85.

10

## III.

Whether Wilson is eligible for the Safety Valve Provision depends on whether he possessed a firearm in connection with the offense of conviction and all relevant conduct. <u>See</u> U.S.S.G. § 5C1.2. It is undisputed that Wilson did not possess a firearm in connection with the offense of conviction. Our analysis then has two steps. We must first determine whether Wilson was involved in prior drug dealing that amounted to relevant conduct to the offense of conviction. If we so find, we must then determine whether he possessed a firearm in connection with that prior drug dealing.

## A.

Wilson argues that his drug dealing prior to the September arrest fails to satisfy the three prong test for "same course of conduct." <u>See</u> <u>United States v. Hahn</u>, 960 F.2d 903, 910 (9th Cir. 1992); U.S.S.G. § 1B1.3 comment. (n.9(B)). If Wilson were correct, he would meet the requirements of § 5C1.2(2) because it is undisputed that he did not possess a firearm in connection with the offense of conviction. The government argues that Wilson's drug dealing prior to his September arrest, taken as a whole, is sufficiently similar to the offense of conviction to warrant a conclusion that it was part of the "same course of conduct" or "common scheme or plan."

The applicable standard of relevant conduct for Wilson is that which applies to an offense requiring the grouping of multiple counts, singly undertaken. U.S.S.G. § 1B1.3(a). That section applies to "offenses of a character for which § 3D1.2(d)

11

would require grouping of multiple counts."  U.S.S.G. § 1B1.3(a)(2).  Section 3D1.2(d) requires the grouping of drug offenses, including those covered by § 2D1.1.  U.S.S.G. § 3D1.2(d).  Wilson was sentenced for a drug offense -- possession with intent to distribute over fifty grams of crack -- covered by § 2D1.1.  Thus, his offense is of a character for which § 3D1.2(d) would require grouping of multiple counts.

The record shows that Wilson's drug dealing activities in the year preceding his arrest fit within the definition of "same course of conduct."  By his own admission, he was regularly engaged in drug sales for the year prior to his September arrest, satisfying both the "regularity" and "temporal proximity" tests for determining "same course of conduct."[5]  Wilson also admitted to moving out of his parents' home in May, 1994, because he was concerned that his drug dealing was putting his family in danger.

Wilson's admissions are consistent with other evidence in the record.  Those who sold guns to Wilson indicated that he was known to be a drug dealer who sold from the corner of Fourth and Broom.  The fact that he was arrested in September selling small quantities of drugs on Third and Broom, taken together with his lack of gainful employment, support the conclusion that he regularly sold drugs.  These findings independently satisfy both the "regularity" and "temporal proximity" prongs of the three

_____

5.    Wilson argues that his Presentence Report admission to selling drugs over the last year should be excluded pursuant to U.S.S.G. § 1B1.8.  However, § 1B1.8 is not applicable as Wilson's admissions merely corroborated information already known by the government.

12

prong test.  See United States v. Richards, 27 F.3d 465, 468–69 (10th Cir. 1994); United States v. Moore, 927 F.2d 825, 828 (5th Cir.), cert. denied, 502 U.S. 871 (1991); United States v. Santiago, 906 F.2d 867, 873 (2d Cir. 1990).

Although Wilson did not admit to dealing the same types of drugs both while in possession of firearms and in connection with his offense of conviction, other evidence supports this conclusion.  For example, Wilson was arrested in September while in possession of both marijuana and cocaine.  In May, 1994, Wilson told someone he bought guns from that he could supply him with "anything he wanted" by way of drugs, and specifically offered to trade him cocaine for firearms.  Although mindful that we are not to evaluate Wilson's behavior at "a level of generality that would render worthless the relevant conduct analysis," Hill, 79 F.3d at 1483, the record has demonstrated that Wilson has dealt drugs, and cocaine in particular, both when he was in possession of firearms and in connection with the offense of conviction.  Wilson's admission of prior drug dealing, the reputation evidence and the circumstances surrounding his September arrest are sufficient to satisfy the similarity prong.  We conclude that Wilson's prior drug dealing, particularly during May, 1994, is part of the same course of conduct as the offense of conviction.  See id. at 1484–85.

The record indicates that Wilson was continuously involved in the sale of drugs for at least one year until his arrest, that the business was so large that he employed others to sell for him, and that he offered a variety of drugs for sale

13

throughout. We conclude from this course of conduct that Wilson's prior drug dealing was relevant conduct to the offense of conviction for possession of crack with the intent to distribute for the purposes of the Relevant Conduct and Safety Valve Provisions. Because we so conclude, we need not decide whether they were also part of a common scheme or plan.

B.

Wilson further argues that even if the prior drug dealing can be tied to the offense of conviction, the possession of the firearm that was contemporaneous with the earlier drug dealing should not ride "piggyback" on our safety valve analysis. That is, even if the earlier drug dealing is relevant conduct, Wilson's involvement with firearms is too tenuously connected to the offense of conviction for the purposes of the Safety Valve Provision. The government argues that the drug dealing is sufficiently connected to Wilson's involvement with firearms to make him ineligible for the safety valve. In determining whether Wilson possessed a firearm in connection with his prior drug dealing, we again look to the evidence of record.

Wilson was involved in gun transactions from May through July, 1994, and he was arrested for gun possession in June, 1994. These actions are obviously concurrent with conduct relevant to the offense of conviction as they occurred during the period in which Wilson dealt drugs. Moreover, he bought firearms to protect himself, those who worked for him and his drug enterprise; he attempted to trade drugs for guns; and he participated in firearms transactions with the same parties who

14

sold him the firearms meant for his drug enterprise.  Thus, Wilson's involvement with firearms furthered his drug enterprise; and his firearms transactions resulted from his contact with those he met through his drug enterprise.  We conclude that his involvement with firearms is integrally connected to his prior drug dealing.

IV.

Accordingly, the district court's findings of fact support the conclusion that Wilson possessed a firearm in connection with his prior drug dealing, and that this was conduct relevant to the offense of conviction for the purposes of the Safety Valve Provision.  The district court correctly concluded that Wilson failed to meet one of the requirements of the Safety Valve Provision.  Thus, we will affirm the district court's refusal to apply the Safety Valve Provision.

15