PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 09-2860

UNITED STATES OF AMERICA

v.

WILLIAM WEST,
                              Appellant

On Appeal from United States District Court
for the Middle District of Pennsylvania
(D.C. No. 4-08-cr-00238-001)
District Judge: Honorable John E. Jones, III

Argued February 4, 2010

Before: McKEE, *Chief Judge*, HARDIMAN, *Circuit Judge*,
and RUFE, *District Judge**

(Filed: April 29, 2011)

OPINION

*The Honorable Cynthia M. Rufe, United States
District Judge for the Eastern District of Pennsylvania, sitting
by designation.

Stephen F. Becker (Argued)
Shapiro & Becker
114 Market Street
Lewisburg, PA 17837-0000
        Attorney for Appellant

Theodore B. Smith, III (Argued)
Executive Office of the
United States Attorney
Evaluation & Review Staff
600 E. Street, N.W.
Suite 8500, Bicentennial Bldg.
Washington, DC 20530
        Attorney for Appellee


RUFE, *District Judge*.

William West appeals the sentence imposed on him by the District Court for possession of a stolen firearm in violation of 18 U.S.C. § 922(j). Specifically, West challenges the District Court's application of a four-level enhancement to his sentence, pursuant to U.S.S.G. § 2K2.1(b)(6), for possessing a firearm in connection with another felony offense. We have jurisdiction over this appeal pursuant to 18 U.S.C. § 1291 and 18 U.S.C. § 3742. For the reasons that follow, we vacate West's sentence and remand to the District Court for resentencing.

**I.**

Under 18 U.S.C. § 3742(a)(1)–(a)(2), this Court has jurisdiction to review sentences imposed in violation of the law or as a result of an incorrect application of the United States Sentencing Guidelines (the "Guidelines"). *United States v. Harrison*, 357 F.3d 314, 317 (3d Cir. 2004), *sentence vacated and remanded*, 543 U.S. 1102 (2005). At sentencing, a district court should apply a preponderance of the evidence standard to all facts relevant to the Guidelines, including any finding that the defendant committed the offense of conviction in connection with another felony. *United States v. Grier*, 475 F.3d 556, 568 (3d Cir. 2007) (en banc); *see also United States v. Berry*, 553

2

F.3d 273, 280 (3d Cir. 2009). "That the District Court applied an acceptable burden of proof does not, of course, mean that its findings of fact should be upheld." *Grier*, 475 F.3d at 568. We review the District Court's factual findings relevant to the Guidelines for clear error and exercise plenary review over the District Court's interpretation of the Guidelines. *Grier*, 475 F.3d at 570; *see also Harrison*, 357 F.3d at 317 ("This Court reviews a district court's interpretation of the sentencing guidelines *de novo*, and a district court's findings of fact supporting application of the guidelines for clear error." (citing *United States v. Butch*, 256 F.3d 171, 177 (3d Cir. 2001))). We also review for clear error the District Court's determination of what constitutes "relevant conduct" for the purposes of sentencing. *See Harrison*, 357 F.3d at 317 (citing *United States v. Perez*, 280 F.3d 318, 352–54 (3d Cir. 2002)). "'A finding is clearly erroneous when, although there is evidence to support it, the reviewing body on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Grier*, 475 F.3d at 570 (quoting *Concrete Pipe & Prods. of Cal., Inc. v. Constr. Laborers Pension Trust for S. Cal.*, 508 U.S. 602, 622 (1993)) (internal citations and punctuation omitted). "A sentence imposed as a result of a clearly erroneous factual conclusion will generally be deemed 'unreasonable' and, subject to the doctrines of plain and harmless error, will result in remand to the district court for resentencing." *Id*. at 570.

## II.

In order to support its application of the four-level Sentencing Guidelines enhancement for possession of a firearm in connection with another felony, the District Court relied on two events: (1) West's February 28, 2007 arrest and subsequent plea to possession of a stolen firearm; and (2) a July 27, 2007 incident which led to an arrest, but not a conviction.

### A.

On February 28, 2007, West was pulled over by a Pennsylvania State Police trooper for a traffic offense while traveling on Interstate 80 in the vicinity of Bloomsburg,

Pennsylvania. The trooper issued a warning for the traffic offense and obtained West's consent to search the vehicle.[1] In the glove compartment, the trooper found approximately $9,000 in cash, a small amount of marijuana,[2] and a .45 caliber Taurus handgun.[3] Police took West and his passenger into custody and obtained a search warrant for the rest of the car, pursuant to which they discovered a .38 caliber Taurus revolver inside a backpack in the trunk.[4] In a post-arrest interview, after waiving his *Miranda* rights, West admitted both to possession of the cash and marijuana found in the glove compartment and to knowledge that the car

---

[1] *See* Sentencing Tr. 6 (June 16, 2009) (Dkt. No. 61). All court documents cited herein, except the appellate briefs and the Presentence Investigation Report, are entered on the docket for *United States v. William West*, No. 4:08-cr-00238 (M.D. Pa.) (filed June 11, 2008).

[2] The record does not provide the specific amount of marijuana found in the glove compartment. The parties concede that "small amount[s]" of marijuana were seized during both the February and July incidents, but the precise measures are not identified in either party's appellate brief, the Presentence Investigation Report, either party's sentencing memorandum (Dkt. Nos. 41 & 42), the District Court's sentencing Opinion and Order (Dkt. No. 49), or the transcript of the sentencing proceeding (Dkt. No. 61). The only document suggesting the amount of drugs seized in either incident is a motion filed by the Government post-sentencing, which states that "[i]n the course of the investigation and prosecution of the above-captioned case, police seized and retained . . . contraband," including "2 small baggies of marijuana." Mot. to Confiscate & Destroy Firearm (Sept. 9, 2009) (Dkt. No. 62). The Motion provides no further detail, however, as to the total quantity of marijuana the baggies contained or what portion of that total was seized in each incident.

[3] Sentencing Tr. 7, 11.

[4] *Id.*

4

contained at least one firearm, but did not admit to possession or ownership of either of the guns found in the car. [5] The gun in the glove compartment, he asserted, belonged to Tyana Martin, the sister of West's girlfriend, Taniea Martin. [6] West had observed Tyana Martin place the .45 in the glove compartment the preceding Saturday, February 24th, while the two of them were attending a party, but did not notice that the gun was still there when he placed his own items in the glove compartment on the morning of February 28th. [7] West also told police that he and Tyana Martin had not driven the car home from the party, but had left it parked on the street overnight. When he returned to retrieve the car the Monday morning after the party, he noticed a .38 revolver lying on the rear seat; he picked up the revolver, handled it, and replaced it on the rear seat. [8] Post-arrest, West also admitted that he had placed cash and marijuana in the glove compartment on the day of his arrest, [9] but did not explain how the .38 found its way onto the rear seat of the car, or later, into a backpack in the trunk. [10] West was charged locally for this incident and released on bail.

---

[5]      *Id*. at 11–15

[6]      *Id*. at 12.

[7]      *Id*. at 12–13, 15.

[8]      *Id*. at 12, 15–16

[9]      *Id*. at 12–13, 15.

[10]      At the time of his guilty plea, West acknowledged that he knew the .38 was stolen. Mem. Op. & Order 2 (May 21, 2009) (Dkt. No. 49).

[11]      *Id*.

5

[11] He later pleaded guilty to possession of the stolen .38 revolver found in the trunk, but not to possession of the .45 in the glove compartment.

**B.**

Five months later, on July 27, 2007, during a fire-code inspection of West's girlfriend's rented apartment at 319 Louisa Street, in Williamsport, Pennsylvania, a local fire marshal observed a handgun resting on top of a bureau in a bedroom in which West was sleeping.

---

[12] The Presentence Investigation Report ("PSR") lists four arrests for West between February and November of 2007: (1) February 28th, for possession of a firearm and possession of marijuana; (2) July 27th, for possession, conspiracy to manufacture, and possession with intent to deliver a controlled substance; (3) November 7th, for possession of drug paraphernalia, and possession of and possession with intent to deliver a controlled substance; and (4) November 11th, for possession of marijuana. *See* PSR ¶ 36–39 (Feb. 23, 2009). No federal charges were filed regarding the November 2007 arrests, and no evidence was presented on those allegations at sentencing. After the instant federal indictment was filed, all local charges were dismissed in lieu of federal prosecution. *See id.*

[13] Sentencing Tr. 21–22. The Presentence Report notes that a fire department employee "observed suspected narcotics in the home" and contacted police. PSR ¶ 9. This account was later contradicted by testimony presented at sentencing, in which Patrol Supervisor John McKenna stated that fire marshals contacted police because they observed a handgun on top of a dresser. Sentencing Tr. 21. Both parties cited McKenna's version of the facts in their respective briefs. *See* Appellant's Br. 6; Appellee's Br. 9. No further clarification of this discrepancy is found in the record.

[13] Police, summoned by fire marshals, arrived at the scene just as West was leaving the apartment.

[14] Police detained West and questioned him about the presence of firearms on his person or in the apartment.

[15] He led the officers upstairs to the bedroom, but the gun was no longer on the bureau.

[16] West summoned his girlfriend, Taniea Martin, who admitted to police that she had moved the gun, and consented to have the apartment searched.

[17] The gun, a 9mm Kel-Tec pistol, was recovered from a clothing-filled trash bag located outside the bedroom door.

[18] A search of the entire apartment led to the discovery of an unspecified amount of cash, a small amount of marijuana,

[19] unspecified drug paraphernalia, and an empty box for a handgun with the same serial number as that seized five months earlier from the glove compartment of the vehicle operated by West.

---

[14] Sentencing Tr. 22.

[15] *Id.*

[16] *Id.* at 23.

[17] *Id.* at 23, 26.

[18] *Id.* at 27.

[19] As with the marijuana found in West's vehicle on February 28th, *supra* note 2, no document in the record specifies the amount of drugs recovered or cash seized at 319 Louisa Street, nor does the record offer any further information or evidence regarding the location of the drugs, drug paraphernalia, or cash within the apartment. West ultimately agreed to forfeit $16,110, *see* Corrected Plea Agreement ¶ 13 (Sept. 12, 2008) (Dkt. No. 22); thus, we may infer that the cash seized at 319 Louisa Street was approximately $7,110 ($16,110 minus the $9,000 seized in February).

[20] Sentencing Tr. 27.

[20] The gun recovered at 319 Louisa Street was later reported by its owner as stolen.

## III.

On June 11, 2008, a grand jury sitting in Harrisburg, Pennsylvania returned an indictment charging West with possession with intent to distribute marijuana in violation of 21 U.S.C. § 841(a)(1) and possession of firearms and ammunition by a convicted felon in violation of 18 U.S.C §§ 922(g)(1) and 924(e).[22] The indictment also included, as a third count, notice of criminal forfeiture pursuant to 21 U.S.C. § 853.[23] The charges were intended to encompass West's alleged criminal activities from February through November of 2007.[24] On July 1, 2008, West entered a plea of not guilty to the charges in the indictment.

Approximately two months later, the United States Attorney filed a one-count Information, charging West with receipt and possession of a stolen firearm "[o]n or about July 2007" in violation of 18 U.S.C. §§ 922(j) and 2.[25] The Information was accompanied by a written plea agreement[26] which provided that West would plead guilty to the single count charged, and the Government would accept his plea in satisfaction of the charges set forth in the original indictment.

[21]     PSR ¶ 9.

[22]     Indictment 1–2 (June 11, 2008) (Dkt. No. 1).

[23]     *Id*. at 3.

[24]     *Id*. at 1.

[25]     Information (Aug. 25, 2008) (Dkt. No. 14).

[26]     Plea Agreement (Aug. 25, 2008) (Dkt. No. 15).

[27]     *See* Corrected Plea Agreement ¶ 1 (Sept. 12, 2008) (Dkt. No. 22).

West waived indictment and pleaded guilty to the Information; however, instead of admitting to the charged conduct of possession of a stolen 9mm handgun in July, West admitted only to possession of the stolen .38 revolver found in the trunk of his car on February 28th.

The Government attempted to reconcile this conflict by moving to amend the Information to read, "Beginning on or about February 2007 and continuing through on or about July 2007 . . . [,]" so that "the charge embrace[d] the totality of the alleged relevant conduct."

West concurred in the Motion, which was granted by the District Court, but reserved his right to contest his culpability for the July events.

At the direction of the District Court, the United States Probation Office prepared a Presentence Investigation Report. The probation officer determined that West's base offense level for possession of the stolen .38 revolver was 24, pursuant to U.S.S.G. § 2K2.1(a)(2), and recommended three enhancements to the base offense level: a two-level increase for possessing three firearms under U.S.S.G. § 2K2.1(b)(1)(A); a two-level increase for possession of a stolen firearm under U.S.S.G. § 2K2.1(b)(4); and the four-level enhancement relevant to the instant appeal, for using or possessing a firearm in connection with another felony offense under U.S.S.G. § 2K2.1(b)(6).

---

[28] *See* Mem. Op. & Order 3.

[29] Motion to Amend Information ¶¶ 1–2 (May 17, 2009) (Dkt. No. 45).

[30] *Id.* ¶ 3.

[31] Namely, felony possession of marijuana by an individual previously convicted of one or more drug offenses. *See* 21 U.S.C. § 844(a).

[32] Appellee's Br. 10–11.

[32] The probation officer subtracted two levels for acceptance of responsibility under § 3E1.1(a) and one level for entering a timely guilty plea, resulting in a total offense level of 29.

[33] At that offense level, West's Criminal History Category of IV [34] yielded a Guideline Range of 121 to 151 months imprisonment, adjusted downward to the statutory maximum of 120 months for a § 922(j) violation.

[35] *See* 18 U.S.C. § 924(a)(2) and U.S.S.G. § 5G1.1(a). West timely objected to two of the enhancements recommended in the Presentence Report: the two-level increase for possessing three firearms and the four-level increase for possessing one or more guns "in connection with" another felony offense.

[36] Both parties filed sentencing memoranda addressing West's objections and the District Court issued a Memorandum Opinion and Order preliminarily resolving several of those objections. In that Opinion, the District Court determined that the July 2007 incident qualified as conduct relevant to the offense of conviction under U.S.S.G. § 1B1.3; therefore, evidence recovered in both February and July would be considered at sentencing. Taking the events of July into account and explaining that it was interpreting the phrase "in connection with" "broadly" and "expansively," pursuant to this Court's decision in *United States v. Loney*, 219 F.3d 281, 284 (3d Cir. 2000), the District Court overruled West's objection to the application of § 2K2.1(b)(6) and found that West had possessed at least one firearm in connection with another felony offense.

---

[33]     *Id*. at 11.

[34]     *Id*. *See also* PSR ¶ 29–35 (calculating West's criminal history points and criminal history category). West's previous offenses, convictions and sentences add up to seven criminal history points pursuant to U.S.S.G. § 4A1.1–A1.2, and place West in criminal history category IV (7–9 criminal history points). *See* Sentencing Table, U.S.S.G. § 5A.

[35]     Appellee's Br. 11.

[36]     Mem. Op. & Order 4.

[37]     *Id*. at 11-13.

[37] In relevant part, the District Court noted:

> In this case, during the February 2007 incident, a firearm was found in the same glove compartment as West's marijuana and a large amount of cash. A second firearm was found in the trunk of the same car. During the July 2007 incident, another firearm was found in the same residence as more marijuana possessed by West. These circumstances indicate that the confluence of drugs and guns found here is not accidental. The firearms were in close proximity to the drugs and easily accessed by West.

[38] However, recognizing that the underlying facts were disputed, the District Court reserved its final rulings on West's objections for the sentencing hearing.

[39] At sentencing, the Government presented two law enforcement witnesses to the February traffic stop and post-arrest interview with West, and two to the July arrest and search of 319 Louisa Street. In turn, West presented several witnesses in support of his objections to the sentencing enhancements: Tyana Martin, who testified that she was the owner of the .45 caliber handgun recovered from the glove compartment on February 28th;

[40] Taniea Martin, who testified that she was the owner of the 9mm pistol found in her apartment in July;

[41] and West's mother, Earlirene Chapman, who testified that West's primary residence was her home at 623 Second Avenue, not his girlfriend's apartment at 319 Louisa Street, and that she

---

[38]    *Id*. at 12.

[39]    *Id*. at 14.

[40]    Sentencing Tr. 29–43.

[41]    *Id*. at 43–56.

11

had given West $5,000 of the $9,000 found in his glove compartment in February, to buy a new car.[42]

The District Court did not find the testimony of West's witnesses convincing, taking particular note of Taniea Martin's lack of credibility.[43] However, neither the Court nor the prosecutor questioned Ms. Chapman at any length, and the Government offered no evidence to counter her assertions regarding West's primary residence or the source of the cash seized in February. Ultimately, the District Court found that West either possessed or constructively possessed the 9mm recovered at 319 Louisa Street in July, but ruled in favor of West with respect to possession of the .45 recovered in February, finding that it did indeed belong to Tyana Martin.[44] The Court stated:

> I'm going to err on the side of caution, however, as to the first incident. It is a very, very close call for the Court. I'm particularly concerned again about potentially—about manufactured testimony and potential perjury in this case, but there is just not enough. I'm going to drop the knife on Mr. West's side as it attends the first incident, which takes away the two level enhancement under 2K2.1(b)(1)(A).

---

[42] *Id*. at 59–62.

[43] *See id*. at 69 ("I am able to easily reach a determination by a preponderance of the evidence that Mr. West did possess the . . . nine millimeter firearm, on that occasion. I find the testimony of Taniea Martin incredible. Likely, it's the Court's view that she perjured herself this morning . . . ."); *see also id*. at 80 ("I'm quite sure that you suborned perjury this morning. . . . You ought to be separately charged for that.")

[44] *See id*. at 70.

[45] *Id*.

After determining that counsel had no additional outstanding objections, the District Court made no further factual findings and did not revisit its earlier decision approving the four-level § 2K2.1(b)(6) enhancement, leaving West with a base offense level of 27 and a Guideline Range of 100 to 125 months. West received a custodial sentence of 120 months imprisonment, three years of supervised release, and a special assessment of $100.

On appeal, West challenges the sentence imposed, contending that the District Court erred in finding that the July incident was relevant conduct for the purpose of sentencing him for the February offense of conviction, and erred in finding that he possessed a gun or guns in connection with another felony offense pursuant to § 2K2.1(b)(6). Absent the four-level enhancement under § 2K2.1(b)(6), the Guidelines calculation for West's sentence would have resulted in a sentencing range of 70 to 87 months, rather than 100 to 125 months.

## IV.

To ensure that a sentence reflects a defendant's total culpability, the Guidelines provide for an increase in the base offense level—and consequently, the base sentencing range—whenever a firearm is used or possessed "in connection with" another felony offense. *See United States v. Navarro*, 476 F.3d 188, 192 (3d Cir. 2007) (citing *Loney*, 219 F.3d at 287–88). Proper application of the four-level enhancement under § 2K2.1(b)(6) requires finding, by a preponderance of the evidence, that the defendant used or possessed a firearm; that the

---

[46]     *See id.*

[47]     *Id.* at 81.

[48]     A base offense level reduction to 23, combined with a Criminal History Category of IV, yields a Guideline Range of 70–87 months. *See* Sentencing Table, U.S.S.G. § 5A.

defendant committed another felony offense, regardless of whether a criminal charge was brought or a conviction obtained; and that the firearm facilitated, or had the potential of facilitating, the felony offense. *See* U.S.S.G. § 2K2.1, comment. (n.14).

## A.

We first address the District Court's determination that the July incident was relevant conduct for the purpose of sentencing West for the February offense of conviction. Section 1B1.3 of the Sentencing Guidelines provides that, unless otherwise specified, base offense levels, specific offense characteristics, and various adjustments shall be determined on the basis of "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant . . . that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense." U.S.S.G. § 1B1.3(a)(1)(A). With respect to offenses of a character for which § 3D1.2(d) would require grouping of multiple counts—such as an offense involving multiple firearms under § 2K2.1(b)(1), or where a firearm was used or possessed in connection with another felony offense under § 2K2.1(b)(6)—sentencing shall be determined on the basis of all acts and omissions committed by the defendant "that were part of the same course of conduct or common scheme or plan as the offense of conviction." U.S.S.G. § 1B1.3(a)(2); *see also United States v. Blackmon*, 557 F.3d 113, 123 (3d Cir. 2009) (citing *United States v. Wilson*, 106 F.3d 1140, 1144 (3d Cir. 1997)). Solely for the purpose of objecting to the relevant conduct analysis, West admitted to possession of all three guns, leaving in question only the final element of the analysis—whether the offenses were part of the same course of conduct. "For two or more offenses to constitute part of a common scheme or plan, they must be substantially connected to each other by at least one common factor, such as common victims, common accomplices, common purpose, or similar *modus operandi*." U.S.S.G. § 1B1.3, comment. (n.9(A)). Offenses that do *not* fall within the definition of a common scheme or plan—as these plainly do not—may nonetheless qualify as part of the same

14

course of conduct "if they are sufficiently connected or related to each other as to warrant the conclusion that they are part of a single episode, spree, or ongoing series of offenses." U.S.S.G. § 1B1.3, comment. (n.9(B)). As we noted in *Wilson*, although there is substantial overlap between the terms "common scheme" and "course of conduct," the latter envelops a greater sphere of activity than the former. *See Wilson*, 106 F.3d at 1143.

In determining whether offenses are sufficiently related to form a single course of conduct, three factors must be considered: (1) the degree of similarity of the offenses; (2) the regularity (repetitions) of the offenses; and (3) the time interval between the offenses. *See id.*; *see also Wilson*, 106 F.3d at 1143–44 (adopting this three-prong test). No one of these factors is dispositive; however, it is generally held that where one factor is weak or absent, a stronger showing of at least one of the other factors is required. *See id.* "For example, where the conduct alleged to be relevant is relatively remote to the offense of conviction, a stronger showing of similarity or regularity is necessary to compensate for the absence of temporal proximity." U.S.S.G. § 1B1.3, comment. (n.9(B)).

The District Court found that, in light of the fact that West was on bail for the February offenses when he was arrested in July, the five-month interval between the two incidents met the requirement of temporal proximity.[49] We are inclined to agree. Caselaw is not specific as to how much time must elapse between offenses for conduct to be irrelevant for the purpose of sentencing; but as we noted in *Wilson*, courts have considered as relevant conduct offenses that preceded the offense of conviction by as much as seventeen months. *See Wilson*, 106 F.3d at 1144 (citing cases). We agree with the District Court's holding that the five-month interval here is not of such duration as to render the events of July indisputably remote from the events of February. Nevertheless, where the time between offenses is not strongly supportive of finding relevant conduct, the offenses must show significant

---

[49]     Mem. Op. & Order 8.

similarity and regularity.  *See United States v. Hahn*, 960 F.2d 903, 910–11 (9th Cir. 1992).

As this Court recently stated in *United States v. Nunez*, "'[a] crime merely suggested by or arising out of the commission of a previous crime is not . . . related to the earlier crime in the special sense of being part of a common plan or scheme,' as required by § 1B1.3." 322 Fed. Appx. 114, 116 (3d Cir. 2009) (unpublished) (quoting *United States v. Hallman*, 23 F.3d 821, 826 (3d Cir. 1994) ("In determining whether there was a common scheme or plan, intent of the defendant is a crucial part of the analysis.")).   While offenses forming a course of conduct need not demonstrate the same degree of similarity as offenses forming a common scheme, the result—a finding of relevant conduct—is the same, and the inquiry demands a similarly careful analysis.  Although we do not find that the District Court's finding that West "possessed" the 9mm handgun recovered in July was clearly erroneous, based on the underdeveloped factual record currently before us, we are unable to agree that the July and February offenses were sufficiently similar or regular to satisfy the relevant conduct standard.

As we have noted, *supra* notes 2 and 19, the Government did not present evidence regarding the quantity of drugs or money found in West's girlfriend's apartment in July or the proximity of the drugs to West or to the gun on the bureau.  The record is silent as to whether West knew that money, marijuana and drug paraphernalia were present in his girlfriend's apartment, and there is no evidence that all the items belonged to him or were found in locations under his control.  While it is correct that "[i]n evaluating offenses under the similarity prong, a court must not do so at such a level of generality that would render worthless the relevant conduct analysis," *Wilson*, 106 F.3d at 1144 (internal punctuation and citation omitted), the Government is not relieved of its responsibility to prove sentencing factors by a preponderance of the evidence.  Although both incidents involved a stolen firearm in relatively close proximity to cash and some small but unspecified quantity

of marijuana, these facts alone are not sufficient to show more than a pair of similar but isolated and unrelated events. [50] We therefore hold that the District Court's finding that the events of July were relevant conduct for the purpose of sentencing West for his offense of conviction was clearly erroneous, and we will not factor the 9mm handgun, drugs, or money recovered in July into our analysis of the § 2K2.1(b)(6) sentencing enhancement.

**B.**

Section 2K2.1(b)(6) of the Sentencing Guidelines provides that:

> If the defendant used or possessed any firearm or ammunition in connection with another felony offense; or possessed or transferred any firearm or ammunition with knowledge, intent, or reason to believe that it would be used or possessed in connection with another felony offense, increase by 4 levels. If the resulting offense level is less than level 18, increase to level 18.

Until November 2006, the Guidelines did not define the phrase "in connection with," and many circuits, including this Circuit, gave it a plain meaning interpretation, construing it broadly. *See, e.g.*, *Loney*, 219 F.3d at 284. In 2006, the United States Sentencing Commission issued a number of Amendments to the

---

[50] *See, e.g.*, *United States v. Hill*, 79 F.3d 1477, 1482 (6th Cir. 1996) ("[Section 1B1.3] only applies if 'there are distinctive similarities between the offense of conviction and the remote conduct' and cannot be used to sentence a defendant based on 'isolated, unrelated events that happen only to be similar in kind.'") (quoting *United States v. Sykes*, 7 F.3d 1331, 1336 (7th Cir. 1993)).

Guidelines, and added Application Note 14 to § 2K2.1 to address a growing conflict among the circuits regarding the interpretation of § 2K2.1(b)(6).[51] Application Note 14(A) provides general guidance to the sentencing courts, stating that "in general . . . subsections (b)(6) and (c)(1) apply if the firearm or ammunition facilitated, or had the potential of facilitating, another felony offense or another offense, respectively."

Application Note 14(B), however, provides more specific guidance when the "other offense" is a drug trafficking offense, stating in pertinent part, that:

> Subsection[] (b)(6) . . . appl[ies] . . . in the case of a drug trafficking offense in which a firearm is found in close proximity to drugs, drug-manufacturing materials, or drug paraphernalia. In these cases, application of subsection[] (b)(6) . . . is warranted because the presence of the firearm has the potential of facilitating another felony offense . . . .

U.S.S.G. § 2K2.1, comment. (n.14). With this commentary, the Sentencing Commission sought to address the concern expressed by the Supreme Court in *United States v. Smith*, 508 U.S. 223 (1993), that a defendant might be punished for committing a drug trafficking offense while in possession of a firearm, even when the presence of the firearm is purely coincidental or unrelated. *See id.*, 508 U.S. at 238.

Because § 2K2.1(b)(6) requires that a firearm be possessed in connection with another *felony* offense, courts in this Circuit have generally analyzed the application of the

---

[51]    *See* Final Amendments of the United States Sentencing Guidelines, at 22–23 (2006) (*available at* www.ussc.gov/2006guid/Finalamend2006.pdf).    The 2006 Amendments also re-designated § 2K2.1(b)(5) as § 2K2.1(b)(6) and (c)(1), due to unrelated additions and deletions elsewhere in the Guidelines.

sentencing enhancement in connection with drug trafficking, rather than drug possession, offenses.

[52] *See, e.g.*, *Navarro*, 476 F.3d at 197–98 (upholding the enhancement where defendant had received a firearm in exchange for crack cocaine, because the exchange itself constituted felony drug distribution); *Loney*, 219 F.3d at 283 (upholding the enhancement where a firearm was found on defendant's person along with 29 packets of heroin). This case is atypical in that respect. It is uncontested that West's possession of even a small quantity of marijuana in February was a felony due to his previous drug convictions, *see, e.g.*, *Navarro*, 476 F.3d at 190 n.3,

[53] and, for this reason, the District Court never reached the issue of whether West was engaged in drug trafficking. The initial indictment charged West with possession with intent to distribute in violation of 21 U.S.C. § 841(a)(1), but those charges were dismissed by West's later plea to possession of a stolen firearm. The parties disagreed as to whether the quantities of marijuana and cash seized were indicative of drug distribution, but the District Court found the question immaterial to the enhancement analysis because West's mere possession of drugs was an appropriate predicate felony. The District Court therefore made no finding that West possessed marijuana for the purpose of drug trafficking. Consequently, we will look to our sister courts in the Fourth, Fifth, and Eighth, which have

---

[52]That is, of course, in cases where the predicate offense is drug related. "Trafficking" is usually defined as sale, distribution, or manufacture of a controlled substance—or possession with intent to sell, distribute or manufacture—but not simple possession. *See, e.g.*, U.S.S.G. § 2L1.2, comment. (n.1(B)(iv)).

[53] As here, *Navarro*'s possession of cocaine and marijuana was a felony because he had at least one prior drug conviction. However, because the Government incorrectly conceded that *Navarro*'s simple possession was *not* a felony, we did not address his possession of a firearm in connection with that offense, but rather with a separate and uncharged felony offense of drug distribution.

analyzed the application of § 2K2.1(b)(6) in drug possession (*i.e.*, non-trafficking) cases, for guidance.

The Fourth, Fifth and Eighth Circuits have distinguished possession offenses from trafficking offenses when applying the enhancement under § 2K2.1(b)(6). Those Circuits have held that in a simple possession case, the sentencing court must make a specific finding that the firearm facilitated or had the potential of facilitating possession of the drugs. With a drug trafficking offense, on the other hand, a court is permitted to presume that a firearm in relatively close proximity to drugs is used "in connection" with the offense. For example, in *United States v. Jenkins*, 566 F.3d 160 (4th Cir. 2009), the Fourth Circuit observed:

[D]rug trafficking offenses and drug possession offenses are [not] treated the same for purposes of Section 2K2.1(b)(6). In the case of a drug trafficking offense, Application Note 14(B) provides that when 'a firearm is found in close proximity to drugs, drug-manufacturing materials, or drug paraphernalia' the firearm necessarily 'has the potential of facilitating another felony offense' and thus Section 2K2.1(b)(6) applies. But, in the case of a drug possession offense, the general rule of Application Note 14(A) governs, and therefore the district court must evaluate whether the firearm 'facilitated, or had the potential of facilitating' the other offense to determine whether Section 2K2.1(b)(6) applies.

*See id.,* 566 F.3d at 163 (internal citation omitted); *see also United States v. Jeffries*, 587 F.3d 690, 692–93 (5th Cir. 2009) (under Application Note 14, a four-level enhancement is permitted for non-trafficking drug offenses only if a firearm facilitates or has the potential to facilitate the offense); *United States v. Mansfield*, 560 F.3d 885, 887–88 (8th Cir. 2009) (an underlying drug trafficking offense requires automatic application of the four-level enhancement, but an underlying simple drug possession offense requires an initial determination that the firearm facilitated, or had the potential to facilitate, the offense); *United States v. Blankenship*, 552 F.3d 703, 705 (8th Cir. 2009) (when a defendant subject to a § 2K2.1(b)(6) adjustment possesses a "user" amount of drugs and is not a

20

trafficker, the district court must affirmatively find that the weapon facilitated the drug offense before applying the adjustment); *United States v. Smith*, 535 F.3d 883, 885 (8th Cir. 2008) (evidence did not prove that a defendant's simultaneous possession of firearms, ammunition, and drug residue in his home was anything other than coincidence). We believe this distinction is appropriate.

The District Court correctly found that West possessed the marijuana in the glove compartment of his car in February, based on West's own admissions during his post-arrest interview.[54] The amount was unspecified but described as "small."[55] The Government suggested that West acquired the cash found in his glove compartment from the sale of illegal narcotics, and pointed to the small amount of marijuana also located there to support this contention. The District Court heard testimony from West's mother that $5,000 of the $9,000 was her gift to West for the purchase of a new car, and she produced a check stub for $5,000 to support that claim.[56] She also testified that she believed the remaining $4,000 was earned by West, but no further evidence was offered to corroborate that testimony.[57] The Government did not refute Ms. Chapman's explanation for the source and purpose of the cash, and the District Court made no finding that the money was suggestive of drug trafficking. Because the District Court did not make a factual finding that West was engaged in drug trafficking, the District Court was required to make a specific finding that the gun at issue facilitated or had the potential to facilitate the possession offense.

---

[54]     *See* Sentencing Tr. 11.

[55]     Appellant's Br. 5; Sentencing Tr. 7.

[56]     Sentencing Tr. 59–60.

[57]     *Id*. at 62.

In its written Opinion issued before sentencing, the District Court made a preliminary finding that West possessed three guns in connection with his felony possession of marijuana—the guns found in the glove compartment and trunk of West's car in February, and the gun recovered from his girlfriend's apartment in July—but reserved its final ruling for the sentencing hearing.[58] As we discussed at length *supra* Part IV.A., the firearm recovered in July no longer bears on the analysis of the § 2K2.1(b)(6) enhancement. At sentencing, the District Court concluded that West did not possess the .45 caliber gun found in the glove compartment, and sustained West's objection to the two-level enhancement for possession of three guns under § 2K2.1(b)(1)(A). We agree with this conclusion. In overruling West's objection to the four-level enhancement under § 2K2.1(b)(6), however, the District Court did not re-visit its earlier determination that firearms "in close proximity to the drugs and easily accessed by West . . . . undoubtedly emboldened him in his possession of the drugs."[59] That conclusion was based on the District Court's initial finding that West possessed all three firearms, including the .45 in the glove compartment with the marijuana, but only one

---

[58]    *See* Mem. Op. & Order 11–14.

[59]    *Id*. at 12 (paraphrasing *United States v. Regans*, 125 F.3d 685, 686–87 (8th Cir. 1997) (applying the enhancement where the predicate offense was simple possession because, "when a drug user chooses to carry his illegal drugs out into public with a firearm, there are many ways in which the weapon can facilitate the drug offense and dangerously embolden the offender")). *Regans* was issued more than nine years before the implementation of Application Note 14 and the Eighth Circuit decisions discussed herein, and we do not find its reasoning persuasive here. Furthermore, Regans possessed a gun on his person at the same time he possessed heroin on his person, while West had neither guns nor drugs on his person at the time of either arrest.

gun—the .38 revolver in the trunk of the car—remains relevant to our analysis here.

[60] In finding that West's possession of firearms emboldened his possession of drugs, the District Court relied on this Court's decision in *Loney*.

[61] There, we instructed that the term "in connection with" should be construed "broadly" and "expansively" to express "some relationship or association . . . such as a causal or logical relation or other type of relationship." 219 F.3d at 284. However, *Loney* should not be read to imply that simply possessing a firearm during the commission of another felony offense is sufficient to invoke the enhancement of § 2K2.1(b)(6). *See Loney*, 219 F.3d at 284–85; *see also United States v. Gregory*, 345 F.3d 225, 229 (3d Cir. 2003). As the Supreme Court cautioned in *Smith*, and as this Court has reiterated, "'the presence or involvement [of the firearm] cannot be the result of accident or coincidence.'" *Loney*, 219 F.3d at 286 (quoting *Smith*, 508 U.S. at 238). While a weapon's physical proximity to narcotics may be sufficient to show a connection between the weapon and the drug charges in some cases, *see Loney*, 219 F.3d at 289, quoting *United States v. Gomez-Arrellano*, 5 F.3d 464, 466–67 (10th Cir. 1993), we hold

---

[60] As we state above, the District Court must make a specific finding that the .38 revolver in the trunk facilitated or had the potential to facilitate West's possession of the marijuana located in the glove compartment.

[61] Like *Regans*, *Loney* was decided several years before the implementation of Application Note 14, on a similar set of facts. Loney was arrested with both a loaded gun and 29 packets of heroin beneath his clothing, and this Court had no difficulty in concluding that "when a defendant has a loaded gun on his person while caught in the midst of a crime that involves in-person transactions . . . a district judge can reasonably infer that there is a relationship between the gun and the offense . . . ." *Loney*, 219 F.3d at 288. In those circumstances, the "immediate availability of the gun" has the potential to facilitate such an in-person offense, and is sufficient to establish the necessary connection under § 2K2.1(b)(6). *See id.*

that, where the predicate drug offense is possession, mere proximity is insufficient to establish the required nexus.

The sparse facts of record do not support the conclusion that West's possession of the .38 revolver located in a backpack in the trunk of his car emboldened him to engage in the crime of marijuana possession, or served to protect the marijuana in his glove compartment. The evidence that would permit a sentencing court to draw such a conclusion must be something more than simultaneous possession of a small quantity of drugs and a firearm in the same vehicle, otherwise, the limitation of Application Note 14 to drug trafficking has little effect. *See Jeffries*, 587 F.3d at 695. West stated that he found the .38 revolver on the back seat of the car several days before he placed marijuana in the glove compartment. West did not explain how the gun came to be in a backpack in the trunk of the car, where it was not very easily accessible to West from the passenger area of the car. West has not claimed that he possessed the .38 for self defense, as did the defendant in *Loney*. In fact, although West ultimately pleaded guilty to possession of the .38, nothing in the record suggests that West had ever used or intended to use the gun. West's lackadaisical attitude toward firearms,[62] while admittedly troubling, may support his argument that the presence of firearms and drugs in his vehicle was purely coincidental. The Government offered no evidence to support its contention that the mere presence of the .38 in the vehicle facilitated West's drug possession, and nothing in the record suggests that West was more or less likely to possess marijuana and cash based on the presence or absence of that firearm. Because the District Court did not make a finding that West was

---

[62] By way of example, according to State Trooper Michael Reffeor, West told Reffeor that, on the morning he found the .38 in his car, he simply "laid it back on the back seat of the car and proceeded to just drive around Williamsport doing errands." Sentencing Tr. 12. The record does not reflect that West ever attempted to conceal his firearms from police; he was remarkably forthcoming when asked about the presence of firearms in Ms. Martin's apartment in July, and freely consented to the police search of his vehicle in February.

engaged in drug trafficking, nor did it make a finding that the .38 revolver facilitated or had the potential to facilitate West's drug possession, the District Court's application of the four-level enhancement under § 2K2.1(b)(6) will be reversed.

## V.

For the foregoing reasons, we vacate the sentence imposed by the District Court and remand for resentencing consistent with this Opinion.