NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 15–2002
_____

UNITED STATES OF AMERICA

v.

GELEAN MARK,

Appellant
_____

On Appeal from the District of the Virgin Islands
(D.C. No. 3-05-cr-00076-001)
District Judge: Honorable Curtis V. Gomez
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
December 16, 2016

Before: CHAGARES, JORDAN, and HARDIMAN, *Circuit Judges*.

(Filed:  December 19, 2016)
_____

OPINION*
_____

_____

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

HARDIMAN, *Circuit Judge*.

Gelean Mark appeals his judgment of sentence, claiming the District Court erred in calculating his criminal history under the United States Sentencing Guidelines (USSG). We will affirm.

I

Mark was indicted in 2005 for his role in "Redball I," a conspiracy to possess and distribute large amounts of cocaine in St. Thomas, United States Virgin Islands. Mark's first trial ended in a mistrial. He was tried again in February 2009 and the jury found him guilty on two counts of conspiracy to distribute controlled substances.

The Probation Office prepared a Presentence Investigation Report (PSR) which calculated Mark's offense level as 33 and his criminal history category as III, resulting in an advisory Guidelines range of 168 to 210 months' incarceration. Mark objected to the PSR and the Probation Office issued a revised PSR that reduced Mark's criminal history category to I, yielding a new Guidelines range of 121 to 151 months. At the sentencing hearing, the Government objected to the reduction in Mark's criminal history score and, after hearing argument from both sides, the District Court agreed with the Government, reinstating Mark's criminal history category as III. The parties then agreed that Mark's correct offense level was 31, resulting in a final advisory Guidelines range of 135 to 168 months' incarceration. The Court imposed a bottom-of-the-Guidelines sentence and Mark filed this timely appeal.

II[1]

The issue on appeal is whether Mark's criminal history properly included two prior sentences. The first sentence, imposed on October 7, 2010, arose out of the "Mark-Blyden" RICO enterprise, which was engaged in narcotics distribution, unlawful gambling, and attempted murder. The second sentence, imposed on October 19, 2010, was for Mark's role in "Redball II," a conspiracy aimed at smuggling cocaine out of the Virgin Islands on commercial airlines and distributing it throughout the mainland United States. As Mark acknowledges, we "review for clear error the District Court's determination of what constitutes 'relevant conduct' for purposes of sentencing." *United States v. West*, 643 F.3d 102, 105 (3d Cir. 2011) (quoted in Mark Br. at 8).

The Sentencing Guidelines state that a "'prior sentence' means any sentence previously imposed upon adjudication of guilt . . . *for conduct not part of the instant offense*." USSG § 4A1.2(a)(1) (emphasis added). Mark argues that his RICO and Redball II sentences should not have counted because his conduct in those cases was part of his conduct in the case under review. We disagree.

First, Mark does not persuade us that the conduct underlying his prior convictions was in fact part of the instant offense. Rather, he compares the cases at a high level of abstraction to draw vague connections. For example, Mark argues that "[i]n all three cases, the activity involved purchasing, transporting, importing and selling cocaine" and

---

[1] The District Court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction under 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291.

that in all cases the defendants "utilized phones to communicate," "employed code words," and "drove in cars to conduct drop offs." Mark Br. 12. He also notes that the schemes involved some of the same defendants and overlapped in time. That the three crimes share these similarities—many of which would occur in most cocaine conspiracy cases—is not enough to show clear error. *Cf. United States v. Washington*, 549 F.3d 905, 920–21 (3d Cir. 2008) (explaining that conduct from a prior conviction was not part of the same offense because the two crimes were not "inextricably linked" or "operationally connected").

Nor does Mark explain how the District Court's analysis was clearly erroneous. In comparing the RICO case to this case, the District Court explained that there was insufficient evidence of a common scheme between the two crimes. Specifically, the Court noted the variation in "[t]he MO, the motive, [and] the substantive offense committed" between the two crimes. App. 97; *see also* App. 96 (Government explaining to the District Court, "the underlying offenses that the government had to prove in [the RICO case] had to do with gambling, the dogfighting and the attempted murder, [and] the weapons case."). The Court did not clearly err when it found significant the disparate motives, methods, and substantive offenses of the two crimes.

As for Mark's sentence in the Redball II case, the District Court rightly considered it "a closer call." App. 97. Yet despite the fact that the Redball conspiracies had similar participants and involved the sale of cocaine, there was not "a preponderance that there [was] a common plan between the two, . . . or that the defendant intended the second

4

would be committed as a consequence of the first, or that the offenses were jointly planned." *Id.* And as the Government noted at sentencing, we had previously ruled that the two conspiracies had different objectives. App. 95; *United States v. Mark*, 284 F. App'x 946, 949 (3d Cir. 2008). Specifically, "the conspiracy alleged in Redball I aimed to possess large quantities of cocaine, crack, and marijuana with intent to distribute the drugs on the streets of St. Thomas for financial gain," while the Redball II conspiracy sought "to possess large quantities of cocaine for distribution in New York and North Carolina for financial gain." *Mark*, 284 F. App'x at 949 (citations and quotation marks omitted).

Apart from Mark's objections that we have already rejected, he does not explain how the District Court's analysis was clearly erroneous. In sum, despite some similarities between the cases, we are not "left with the definite and firm conviction that a mistake has been committed." *United States v. Grier*, 475 F.3d 556, 570 (3d Cir. 2007).

\*     \*     \*

For the reasons stated, we will affirm the District Court's judgment.