# United States Court of Appeals
## For the First Circuit

No. 18-2053

UNITED STATES,

Appellee,

v.

JOSE A. TIRADO-NIEVES,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO
[Hon. Aida M. Delgado-Colón, U.S. District Judge]

Before

Lipez and Thompson,
Circuit Judges.*

Kendys Pimentel-Soto, with whom Kendys Pimentel-Soto Law Office LLC was on brief, for appellant.
Julia M. Meconiates, Assistant United States Attorney, with whom Rosa Emilia Rodríguez-Vélez, United States Attorney, and Mariana E. Bauzá-Almonte, Assistant United States Attorney, Chief, Appellate Division, were on brief, for appellee.

December 3, 2020

* Judge Torruella heard oral argument in this matter and participated in the semble, but he did not participate in the issuance of the panel's opinion. The remaining two panelists therefore issued the opinion pursuant to 28 U.S.C. § 46(d).

**LIPEZ**, **Circuit Judge**.  Appellant Jose A. Tirado-Nieves was sentenced to eighty-six months' imprisonment after pleading guilty to two firearms counts.  He claims the sentence was procedurally unreasonable because the district court improperly applied a four-level sentencing enhancement based on his possession of firearms "in connection with another felony," U.S.S.G. § 2K2.1(b)(6)(B), and because the court imposed an above-Guidelines sentence without proper notice.  After careful review of the record, we affirm.

**I.**

**A.   Offense Conduct and Guilty Plea[1]**

In August 2017, an anonymous tipster notified the Puerto Rico police that Tirado-Nieves had been carrying a weapon in plain view in the neighborhood where he lived.  In a subsequent search of his home, officers found Tirado-Nieves in a bedroom near an open black bag containing two rifles.  They also found there a pistol with an adapter to convert the firearm into an automatic machinegun, eight cell phones, ten pistol magazines of various capacities and calibers, approximately 370 rounds of ammunition, and a suitcase containing a plastic baggie with a small amount of

---

[1] Since Tirado-Nieves's appeal follows a guilty plea, "we draw the relevant facts from . . . the change-of-plea colloquy, the undisputed portions of the presentence investigation report ('PSR'), and the transcript of the disposition hearing."  United States v. O'Brien, 870 F.3d 11, 14 (1st Cir. 2017).

marijuana, as well as various items the government identified as drug paraphernalia.[2]  The drug-related items included color-coded vials, small plastic bags, sifters, baking soda, and a scale. Tirado-Nieves admitted that the firearms and other items belonged to him, and he further admitted that he previously had served a prison term for a felony.

Tirado-Nieves subsequently entered a guilty plea to charges of unlawful possession of a firearm by a felon and illegal possession of a machinegun.  See 18 U.S.C. §§ 922(g)(1), 924(a)(2), 922(o).

B.   **Probation Office Sentencing Recommendation**

Tirado-Nieves's Presentence Investigation Report ("PSR") determined a total offense level ("TOL") of 23 based on a calculation that reflected two enhancements: two points because the crimes involved three firearms, see U.S.S.G. § 2K2.1(b)(1)(A), and four additional points because Tirado-Nieves "possessed [a] firearm or ammunition in connection with another felony offense," U.S.S.G. § 2K2.1(b)(6)(B).  The PSR also subtracted three points for acceptance of responsibility.  See U.S.S.G. § 3E1.1.

---

[2]  The record in some places indicates that the drug paraphernalia and some of the firearms were found in a second bedroom, rather than in the master bedroom.  Tirado-Nieves does not suggest that this discrepancy matters, and we therefore assume that the items were all found in the same room.

After Tirado-Nieves objected to the four-point enhancement set forth in § 2K2.1(b)(6)(B), the Probation Office elaborated on its rationale for that increase in an addendum to the PSR. The addendum noted that "[t]he firearms were found in close proximity to drugs, drug manufacturing materials, and drug paraphernalia," and it concluded that, because "the presence of the firearm[s] has the potential of facilitating another felony offense, which in this case is drug trafficking[,] . . . the defendant possessed the firearms in connection with another felony offense[,] drug trafficking."

Accordingly, based on a criminal history category ("CHC") of III and the TOL of 23,[3] the PSR calculated a Guidelines range for Tirado-Nieves of 57 to 71 months' imprisonment. The PSR stated that no factors warranting a sentence outside the Guidelines range had been identified, although the report noted that the district court could, in its discretion, impose a variant sentence pursuant to 18 U.S.C. § 3553(a). After the addendum was issued, Tirado-Nieves submitted a formal objection to the application of the four-point enhancement, and he requested a sentence within the 37-to-46-month range that applied without it.

---

[3] The CHC III designation was based on the Probation Officer's assignment of six criminal history points for Tirado-Nieves's past convictions, which primarily involved weapons violations. See U.S.S.G. ch. 5, Part A.

## C.   Sentencing Hearing

The applicability of the four-level enhancement was vigorously debated at the sentencing hearing.  At the outset of the hearing, when the court sought to confirm that all objections to the PSR had been resolved, the government noted that the § 2K2.1(b)(6)(B) enhancement remained in dispute.  The government then asserted that, given Tirado-Nieves's possession of an "incredible amount of paraphernalia" suggestive of drug trafficking, the court could "reasonably conclude that the evidence shows that the firearms possessed in this case were in connection to the commission of another crime" even though the government did not charge Tirado-Nieves with a drug trafficking offense.  The district court was initially persuaded, stating that "it's my time to rule, and I find that those are clearly related to, and the four points do stand."

At that point, defense counsel asked to present argument on the enhancement, and the court obliged.  Tirado-Nieves's counsel then argued, in effect, that some items characterized by the government as "tools of the trade" -- such as the eight cellphones -- were everyday household items that should not be viewed as evidence of drug trafficking.

However, the district court, plainly skeptical that the authorities had found an "innocent" cache of items, observed that, aside from a notebook the government had described as a "ledger,"

- 5 -

"[e]verything else that is there is related to [the] drug trade." Referring to a one-edged blade found in the room, the court continued: "[U]sually you don't need to be a rocket scientist to know this is to cut cocaine, to cut powder." The court pointed to other items seized -- including a sifter, baking soda, and zip-lock bags -- and then asked, "[w]hat is it I'm missing?" After the court observed that "[e]verything by itself can be an innocent item," defense counsel clarified that he was not saying that the items were innocent. He acknowledged that the items could be used for drug trafficking, but he emphasized that they "are equally indicative of drug possession." Where, as here, there was no evidence of prior drug trafficking by Tirado-Nieves or more suggestive evidence -- such as cash -- the paraphernalia was "all indicative of personal use." In such circumstances, counsel argued, the firearms cannot be linked to drug trafficking and the enhancement should not apply.

In response, the government argued that Tirado-Nieves's counsel had "minimiz[ed] the amount of paraphernalia that was found," noting that all of it was found in the bedroom where firearms were recovered and "not in the kitchen" or "all over the house." The prosecutor gave the court additional photographs of the seized paraphernalia,[4] and asserted that, "for counsel to argue

_____

[4] The government had previously submitted photographs with its Sentencing Memorandum.

that that incredible amount of paraphernalia is for his personal use or could be attributed to personal use[,] is . . . absurd." Defense counsel then responded briefly, emphasizing that "the facts of this case do not look like any of the other cases . . . that I've seen where the enhancement is applied."

In announcing its ruling, the court began by noting "the fact that all of these items were found together in the bedroom of this defendant." The court continued:

> Taking into consideration the amount of what is in there, and the color coded [vials], the ziplocs, the marijuana, the one edge blades . . . which are commonly known to cut material, either the mixers or any powdery substance, it is more indicative than anything else of the commission of a state or federal offense. And specifically a state offense.

Then, after reviewing aloud the Guidelines' application note elaborating on the crimes that qualify as "another felony offense" for purposes of the four-point enhancement,[5] the court observed that "certainly the illegal possession or the possession of paraphernalia is a state offense as well." The district court referenced "the quantity . . . and the type of items" found at Tirado-Nieves's home, observing that "those are indicative and

---

[5] The court stated that "another felony offense . . . means any federal, state or local offense . . . [p]unishable by imprisonment for a term exceeding one year, regardless of whether a criminal charge was brought or a conviction was obtained." See U.S.S.G. § 2K2.1 cmt. n.14(C).

more indicative than not that those are related to the commission of another offense.  So the plus four does remain."

After next resolving in Tirado-Nieves's favor the government's sole objection to the PSR,[6] and hearing additional arguments about the appropriate sentence, the district court adopted the Guidelines range of 57 to 71 months proposed in the PSR.  The court reiterated that four points were added pursuant to § 2K2.1(b)(6)(B) "[s]ince these weapons were possessed in connection with another felony offense in which the defendant had reason to believe it would be used in connection with another felony offense."  The court then reviewed Tirado-Nieves's prior convictions, educational and employment background, and his substance abuse and mental health history.  After describing the murders of several of Tirado-Nieves's family members, the district court made the following statement:

> It seems that of course the actions that he has engaged in will keep driving him to this path of violence.  Here we have that in the commission of this offense, the only way of describing this, anyone who looks at the

[6] The government argued that the court should use a base offense level ("BOL") of 22 -- rather than a BOL of 20, as calculated in the PSR -- based on its view that a prior conviction for robbery should be treated as a crime of violence.  After extended discussion, the court stated that it would "not be disposing in a conclusive way of the issue," but would "just give the benefit of the doubt and go along with the recommendation of the probation officer of not allocating those points."  The court then indicated that the two points would not matter because it had already concluded that "a sentence outside of the applicable guideline range is necessary."

- 8 -

pictures brought by the government in the sentencing memo and the ones we have here is that he had an arsenal.

We are talking about rifles. We are talking about modified pistols to shoot in an automatic fashion. Ammunition. He possessed a large quantity of magazines and ammunition. Some of these magazines are large capacity. Five for the rifle. Five for the weapons. A total of 370 rounds.

And we have confidential tips from a neighborhood in which the neighbors are describing seeing this defendant walking around, plain view, carrying weapons. This is blatant disregard for the law, for the safety of the community that he places in danger.

I am aware and I read carefully that he said that he got a weapon after his brother's killing for his own safety. But this is not a weapon for [his] own safety. This is kind of being prepared for a war.

In addition to that, the seizure lead to the eight cell phones, one black bag, one black suitcase with paraphernalia that included one green box with paraphernalia, one ziploc baggie with marijuana, a clear baggie with tobacco leaves, the scale, the drug manufacturing materials, and the drug paraphernalia to which mention was made. The ziplocs with some items that were color coded like the ones that are used to package and set for distribution, narcotics.

I'm not making any sort of determination that this defendant was involved in drug trafficking, but everything points out to the commission of related offenses and the weapons were possessed in relation to . . . .

. . .

- 9 -

> In this particular case, I think that the facts clearly depict the need for protection of the public.

The court went on to express its view that Tirado-Nieves's circumstances warranted a "departure" from the Guidelines range. The court stated that, "considering all the factors, considering that a sentence not harsher than necessary is to be imposed," it was imposing a term of 86 months' imprisonment and three years of supervised release for each count, to be served concurrently. Defense counsel renewed his objection to the above-Guidelines sentence and asked for reconsideration, which the court denied. This timely appeal followed.

## II.

Tirado-Nieves contends that his sentence is procedurally unreasonable for two reasons. First, he argues that the district court committed clear error by applying the four-point enhancement under Guidelines § 2K2.1(b)(6)(B). Second, he asserts that the district court failed to provide the notice required by Rule 32(h) of the Federal Rules of Criminal Procedure before imposing a sentence that departs from the Guidelines.

## A. Standard of Review

While our "review [of] the district court's interpretation of the Sentencing Guidelines [is] de novo," we review "factual findings for clear error[] and [the] application of the Guidelines to a particular set of facts on a 'sliding

- 10 -

scale'" -- i.e., giving closer scrutiny to law-dominated judgments.  United States v. Cannon, 589 F.3d 514, 516-17 (1st Cir. 2009) (quoting United States v. Sicher, 576 F.3d 64, 71 & n.6 (1st Cir. 2009)); see also United States v. Zehrung, 714 F.3d 628, 631 (1st Cir. 2013).  When a defendant challenges the factual basis for the district court's application of a sentencing enhancement, "we ask only whether the court clearly erred in finding that the government proved the disputed fact by a preponderance of the evidence."  United States v. Luciano, 414 F.3d 174, 180 (1st Cir. 2005) (quoting United States v. Powell, 50 F.3d 94, 103 (1st Cir. 1993)).

**B.   The Applicability of U.S.S.G. § 2K2.1(b)(6)(B)**

### 1.  Legal Background

The Sentencing Guidelines provide for a four-level increase in the offense level when the defendant "possessed any firearm or ammunition in connection with another felony offense." U.S.S.G. § 2K2.1(b)(6)(B).  In 2006, responding to a circuit conflict on the meaning of "in connection with," see U.S.S.G. app. C supp., amd. 691, at 177 (Nov. 2011); United States v. Paneto, 661 F.3d 709, 717 (1st Cir. 2011), the Sentencing Commission added an application note explaining that the requirement is met "if the firearm . . . facilitated, or had the potential of facilitating, another felony offense."  U.S.S.G. § 2K2.1(b)(6) cmt. n.14(A).

A second clarification provided by the new note is particularly pertinent here. Note 14(B)(ii) states that, "in the case of a drug-trafficking offense in which a firearm is found in close proximity to drugs, drug-manufacturing materials, or drug paraphernalia," the enhancement applies without the need for a specific finding by the sentencing court that the firearms were possessed "in connection with" the drug offense. U.S.S.G. § 2K2.1 cmt. n.14(B)(ii).[7] In other words, when the defendant's other felony for purposes of § 2K2.1(b)(6)(B) "is drug trafficking, the guideline means that the enhancement is appropriate whenever the firearm is in close proximity to the drugs." Paneto, 661 F.3d at 717. The application note states that the enhancement is warranted in such instances because "the presence of the firearm has the potential of facilitating another felony offense." U.S.S.G. § 2K2.1 cmt. n.14(B). Reflecting that view, we have recognized that a gun can facilitate drug distribution "by emboldening the enterprise, aiding the collection of a drug debt, or in any number of foreseeable ways." Cannon, 589 F.3d at 519; see also United States v. Rivera Calderón, 578 F.3d 78, 94 (1st Cir. 2009) (observing that, "[i]n drug trafficking[,] firearms have become

---

[7] Note 14(B)(i) similarly provides for the automatic application of the four-level enhancement in the case of a burglary in which the defendant found and took a firearm, "even if the defendant did not engage in any other conduct with that firearm during the course of the burglary."

'tools of the trade'" (quoting United States v. McGuire, 389 F.3d 225, 230 (1st Cir. 2004))).

As we previously have noted, however, the express reference to drug trafficking crimes in Note 14(B)(ii) leaves "open the question of whether having a firearm in connection with a simple drug possession offense is sufficient," on its own, to trigger the four-level enhancement. Paneto, 661 F.3d at 716 n.5 (emphasis added); see also United States v. Matthews, 749 F.3d 99, 106 n.8 (1st Cir. 2014). Although we have not yet answered that question as a general matter,[8] multiple circuits have held that the mere proximity of a firearm is not enough to justify the four-

---

[8] In United States v. Reyes-Torres, 979 F.3d 1, 7-8 (1st Cir. 2020), we indicated that the simultaneous possession of drugs and a firearm outside the home can suffice to trigger the enhancement, citing cases finding the requisite connection because a firearm carried in public may embolden the defendant to possess the drugs or serve as protection. See, e.g., United States v. Justice, 679 F.3d 1251, 1255 (10th Cir. 2012) ("A reasonable person could find that the firearms gave [the defendant] a sense of security emboldening him to venture from his home with drugs that someone might wish to take from him by force."); cf. United States v. Smith, 535 F.3d 883, 886 (8th Cir. 2008) (rejecting emboldenment theory where defendant possessed drugs and firearms at home); see also United States v. West, 643 F.3d 102, 116 (3d Cir. 2011) (stating that the evidence permitting a finding that defendant's possession of a firearm emboldened him or served as protection "must be something more than simultaneous possession of a small quantity of drugs and a firearm in the same vehicle"). However, in Reyes-Torres, we also explicitly held that the enhancement was justified because the undisputed facts showed that the defendant was "clearly in possession of [a] machine gun in furtherance of drug trafficking." 979 F.3d at 8 (emphasis added). Accordingly, Reyes-Torres provides, at most, a partial answer to the possession-only question -- i.e., when the possession is outside the home in circumstances supporting the emboldenment rationale.

level increase when the other felony is drug possession. See United States v. Briggs, 919 F.3d 1030, 1032 (7th Cir. 2019); United States v. West, 643 F.3d 102, 114 (3d Cir. 2011); United States v. Jeffries, 587 F.3d 690, 693 (5th Cir. 2009); United States v. Jenkins, 566 F.3d 160, 163-64 (4th Cir. 2009); United States v. Fuentes Torres, 529 F.3d 825, 827 (8th Cir. 2008). The rationale for caution in such instances is that the simultaneous presence of guns and a small amount of drugs is more likely to be an "accident or coincidence." Jenkins, 566 F.3d at 163 (quoting United States v. Blount, 337 F.3d 404, 411 (4th Cir. 2003)); see also, e.g., West, 643 F.3d at 116; United States v. Blankenship, 552 F.3d 703, 705 (8th Cir. 2009).[9] Hence, in such cases, the courts hold that Application Note 14(A), rather than Note 14(B)(ii) applies, and "the district court must affirmatively make a finding that the weapon or weapons facilitated the drug offense before

_____

[9] The possibility that both firearms and drugs would be at a crime scene only fortuitously was noted in Smith v. United States, 508 U.S. 223 (1993). There, the Supreme Court addressed a sentencing penalty, under 18 U.S.C. § 924(c)(1), for defendants who use or carry a firearm "in relation to" a drug trafficking offense. Id. at 227. The Court stated that "in relation to" "clarifies that the firearm must have some purpose or effect with respect to the drug trafficking crime; its presence or involvement cannot be the result of accident or coincidence." Id. at 238. In describing the requisite relationship, the Court explained that "the gun at least must 'facilitat[e], or ha[ve] the potential of facilitating,' the drug trafficking offense." Id. (quoting United States v. Stewart, 779 F.2d 538, 540 (9th Cir. 1985) (Kennedy, J.)). The Sentencing Commission expressly adopted the language from Smith to elaborate on "in connection with" in Application Note 14. See U.S.S.G. app. C supp. amd. 691, at 177 (Nov. 2011).

applying the adjustment."  Blankenship, 552 F.3d at 705; see also West, 643 F.3d at 114 (collecting cases).

## 2.  Tirado-Nieves's § 2K2.1(b)(6)(B) Enhancement

Tirado-Nieves asserts that the district court erred by adding the four levels to his sentence because the court expressly stated that it was "not making any sort of determination that [he] was involved in drug trafficking," but it then failed to make a specific finding on how the firearms facilitated the state offense -- "the illegal possession or the possession of paraphernalia" -- that the court identified as the triggering "other felony."  Put differently, Tirado-Nieves argues that the district court found that his "other felony" was merely a possession offense, and the court therefore needed to -- but did not -- make a specific finding on how the firearms facilitated that offense.

In our view, this argument misapprehends the application of § 2K2.1(b)(6)(B) in the circumstances of this case.  In the "possession" cases on which Tirado-Nieves relies, courts typically found the enhancement improperly applied where the defendant possessed a small quantity of drugs and there was no evidence of involvement in drug trafficking.  See, e.g., United States v. Walker, 900 F.3d 995, 997 (8th Cir. 2018) (per curiam) (reversing application of the enhancement where the government failed to link "[t]he user quantity of cocaine" inside a car to a shotgun locked in the trunk); West, 643 F.3d at 116 (reversing application of

- 15 -

§ 2K2.1(b)(6)(B) where district court made no finding of drug trafficking or facilitation, and observing that the enhancement requires "something more than simultaneous possession of a small quantity of drugs and a firearm in the same vehicle"); Jeffries, 587 F.3d at 694 (finding the § 2K2.1(b)(6)(B) enhancement unsupported where defendant possessed a small amount of cocaine and "no evidence [was] presented that the defendant [was] a trafficker"); Blankenship, 552 F.3d at 706 (reversing application of the four-level enhancement where the defendant "possessed a 'user' amount of methamphetamine in his automobile, and there [was] no evidence or allegation that he is a drug trafficker"); United States v. Smith, 535 F.3d 883, 885 (8th Cir. 2008) (reversing application of the enhancement where the defendant "possessed only an unmeasured quantity of methamphetamine residue"); cf., e.g., Jenkins, 566 F.3d at 164 (upholding application of the enhancement where defendant "simultaneous[ly] possess[ed]" a loaded revolver and .29 grams of cocaine base on a public street, close to midnight, and near where a gun had been fired because the environment suggested the gun "'was present for protection or to embolden'" defendant (quoting United States v. Lipford, 203 F.3d 259, 266 (4th Cir. 2000))).

This is not a drug possession case.[10]  Although authorities did find a small amount of marijuana in Tirado-Nieves's home, it was the drug paraphernalia, not the drugs, on which the district court focused in its discussion of § 2K2.1(b)(6)(B).  The propriety of the enhancement thus depends on the court's handling of Tirado-Nieves's unlawful possession of paraphernalia.  We agree with Tirado-Nieves that, in announcing that the enhancement applied, the district court did not expressly articulate how the firearms in Tirado-Nieves's bedroom facilitated, or had the potential to facilitate, the possession of the drug paraphernalia also found there.[11]  Absent such an express finding, the question

---

[10] At one point in his brief, Tirado-Nieves refers to the second felony in this case as "drug possession alone," see Appellant's Br. at 21, but he notes elsewhere that the other felony on which the court relied was "seemingly [possession of] paraphernalia."  Id. at 26.  The record here cannot reasonably be viewed to involve "drug possession alone."

[11] The court twice summed up its view that the enhancement applied.  First, after the colloquy with the parties about the applicability of § 2K2.1(b)(6)(B), the court stated: "[G]iven the quantity and the type, and the type of items, those are indicative and more indicative than not that those are related to the commission of another offense.  So the plus four does remain." The reference to "the quantity and the type" appears to describe the firearms.

Second, in reviewing its Guidelines calculation and explaining its chosen sentence, the court stated: "Since these weapons were possessed in connection with another felony offense in which the defendant had reason to believe it would be used in connection with another felony offense, four . . . points are added as specified within the guideline calculations at the Presentence Report."  The court, however, did not elaborate on why or how the firearms would facilitate the possession crime it had identified as the other felony.  See, e.g., Briggs, 919 F.3d at

- 17 -

becomes whether the district court permissibly treated Tirado-Nieves's possession of paraphernalia as an automatic trigger for the four-level increase in offense level. Put simply, we must determine whether the district court properly treated the "possession" felony in these circumstances as akin to the "drug trafficking offense[s]" covered by Note 14(B)(ii).

Based on the record before us, and the district court's own assessment of the evidence, we readily conclude that the court did not err. The court plainly rejected defense counsel's assertion that the paraphernalia discovered in Tirado-Nieves's bedroom evidenced only personal drug use. The court made repeated reference to "the quantity and type of items" seized and their location in a bedroom cache. In addition, in explaining why it found the § 2K2.1(b)(6)(B) adjustment applicable, the court expressly referred to the photographs of the paraphernalia that the prosecutor had highlighted to rebut, in the prosecutor's words, defense counsel's "minimizing [of] the amount of paraphernalia that was found." At one point, the court characterized the items in the bedroom as "related to [the] drug trade." Later, in reviewing the factors leading to its decision to impose an above-Guidelines sentence, the court catalogued the paraphernalia found

---

1033 ("[T]he mere fact that guns and drugs are found near each other doesn't establish a nexus between them. A court must say more to connect the two." (citation omitted)).

in the room, including "drug manufacturing materials" and "[t]he ziplocs with some items that were color coded like the ones that are used to package and set for distribution, narcotics." (Emphasis added.)

To be sure, immediately following that listing of items, the court went on to say it was "not making any sort of determination that this defendant was involved in drug trafficking." Nonetheless, viewing all of its comments in the context of the proceeding as a whole, we discern a clear determination by the court that Tirado-Nieves unlawfully possessed drug paraphernalia in a quantity that was indicative of drug trafficking. The court chose not to characterize that crime as "involve[ment] in drug trafficking" per se,[12] but it inescapably had in mind Commonwealth law on the illegal possession of drug paraphernalia for use in drug dealing. As described above, in identifying Tirado-Nieves's "other felony," the court noted that "the amount of what is in there, and the color coded, the ziplocs,

---

[12] The court may have declined to find that Tirado-Nieves was a drug trafficker because the government pointed out during the sentencing hearing that he had not been charged with a drug trafficking offense in this case. In addition, the government noted that at least some of the items seized were "brand new, ready to be used" -- possibly suggesting to the court that Tirado-Nieves had not yet been "involved" in drug trafficking. Alternatively, the district court could have been observing (albeit imprecisely) that the evidence was sufficient for a sentence enhancement based on drug trafficking, but not necessarily sufficient for a conviction for drug trafficking.

- 19 -

the marijuana, the one edge blades . . . , which are commonly known to cut material, . . . is more indicative than anything else of the commission of a state or federal offense. And specifically a state offense." (Emphasis added.)

It is a felony in Puerto Rico "to knowingly and with criminal intent[] use[,] or possess with the intention of using[,] [certain] drug paraphernalia to . . . pack, repack, refill, store, keep, contain, conceal, . . . or otherwise introduce into the human body a controlled substance." P.R. Laws Ann. tit. 24, § 2411b(c)(2). Puerto Rico also criminalizes the possession of such paraphernalia with the intent -- among other purposes -- to distribute the items for use in "stor[ing], keep[ing], [or] contain[ing]" a controlled substance for unlawful drug use. Id. § 2411b(c)(1).[13] Among the drug-related materials cited in the statute are scales, baking soda, sieves, plastic bags, and "other containers" that could be used to "pack[] small amounts of

_____

[13] This latter provision appears aimed at conduct (such as distribution) that enables others to use the paraphernalia, while the prior provision appears to primarily target the defendant's own use of (or intention to use) the paraphernalia. Section (c)(1) contains language equivalent to the language from section (c)(2) quoted above, but with a primary focus on the dissemination of the paraphernalia. It states, in relevant part, that it is unlawful "to knowingly, and with criminal intent . . . possess with the intent of distributing, selling, disposing, delivering, transporting or concealing" specified drug paraphernalia "in order to . . . pack, repack, refill, store, keep, contain, conceal . . . or otherwise introduce a controlled substance into the human body." P.R. Laws Ann. tit. 24, § 2411b(c)(1).

controlled substances" -- all items found in Tirado-Nieves's possession, some in large quantity. P.R. Laws Ann. tit. 24, § 2411b(a).

The district court also highlighted the nature of the firearms found in the bedroom. Tirado-Nieves possessed not merely a single gun, but a collection of guns and ammunition -- including an automatic weapon -- that the district court described as "an arsenal." Those firearms, found in proximity to a large amount of paraphernalia commonly associated with drug-trafficking, further distanced the facts here from a "possession" offense in which drugs and firearms are more likely to be in proximity only coincidentally. See United States v. Reyes-Torres, 979 F.3d 1, 9 (1st Cir. 2020) (citing "[t]he nature of the firearm found -- a pistol modified to act as a machinegun" -- among the factors "demonstrat[ing] that this gun was not meant merely for personal protection").

In sum, the undisputed facts in this record present a scenario that is nothing like the "simple drug possession offense" for which courts have required an explicit facilitation finding to ensure that an enhancement under § 2K2.1(b)(6)(B) is warranted. Paneto, 661 F.3d at 716 n.5. Although the bare fact that Tirado-Nieves possessed the firearms and drug items in his home might in some circumstances suggest happenstance, see, e.g., Blankenship, 552 F.3d at 705, the evidence here powerfully indicated otherwise.

- 21 -

Given the quantity and type of firearms and drug-related items, the facts closely resemble those for which Application Note 14(B) assumes that "the presence of the firearm[s] has the potential of facilitating another felony offense." U.S.S.G. § 2K2.1 cmt. n.14(B).

Unquestionably, our review would have been aided by an explicit statement on whether the district court was applying Application Note 14(A) or 14(B), and the basis for its conclusion that Tirado-Nieves's possession of firearms facilitated his other felony offense. However, this is not a case where the ambiguities require us to remand for clarification. Cf. Briggs, 919 F.3d at 1033 (remanding for further findings on the § 2K2.1(b)(6)(B) enhancement because "we don't know what the district court thought"). The court clearly found that the possession offense at issue here was linked to drug trafficking, and its disinclination to label Tirado-Nieves a drug trafficker does not negate the force of the evidence supporting that finding.

Hence, put simply, the evidence was "plainly sufficient," Reyes-Torres, 979 F.3d at 8, to support the court's conclusion that the firearms were possessed "in connection with" Tirado-Nieves's unlawful possession of the drug-related items -- an offense that, under Puerto Rico law and on this record, is at least akin to a drug trafficking crime. Accordingly, we conclude

that the district court did not err by imposing the four-level enhancement pursuant to § 2K2.1(b)(6)(B).

## C.    Notice of "Departure"

The parties dispute whether Tirado-Nieves sufficiently preserved his second claim of error and thus disagree about the applicable standard of review.  Because the claim fails regardless of the standard applied, we assume, favorably to Tirado-Nieves, that the claim was preserved.

Citing Rule 32(h) of the Federal Rules of Criminal Procedure, Tirado-Nieves contends that his sentence was procedurally unreasonable because the district court "departed" sua sponte from the Guidelines range of 57 to 71 months without providing the necessary notice of that possibility.  Tirado-Nieves is correct that Rule 32(h) requires a sentencing court to provide "reasonable notice" of its intent to "depart from the applicable sentencing range on a ground not identified for departure either in the presentence report or in a party's prehearing submission." Fed. R. Crim. P. 32(h).  However, not all sentences outside the advisory Guidelines range are subject to the Rule 32(h) requirement.  When a court imposes a "variance," rather than a "departure," Rule 32(h) does not apply.  Irizarry v. United States, 553 U.S. 708, 714 (2008).

As we have previously explained, variances are "non-Guidelines sentences that result from the sentencing judge's

consideration of factors under 18 U.S.C. § 3553[(a)]," while departures are non-Guidelines sentences authorized and "'imposed under the framework set out in the Guidelines.'" United States v. Adorno-Molina, 774 F.3d 116, 126 (1st Cir. 2014) (quoting Irizarry, 553 U.S. at 714). For variances, notice is required only when the district court plans to premise a non-Guidelines sentence "on some ground or fact that would unfairly surprise competent and reasonably prepared counsel." United States v. Politano, 522 F.3d 69, 75 (1st Cir. 2008) (quoting United States v. Vega-Santiago, 519 F.3d 1, 5 (1st Cir. 2008) (en banc)).

Here, the district court rested its above-Guidelines sentence on the factors described in 18 U.S.C. § 3553(a) and, thus, imposed a "variance" rather than a "departure." Before announcing the sentence, the court specifically stated that it was "considering the 3553 factors" and then outlined Tirado-Nieves's age, dependents, education, and employment history. The court went on to describe his substance abuse, mental health treatment, and the details of the instant offense. The court also noted Tirado-Nieves's "disregard for the law" and the importance of promoting "the safety of the community," phrases that track the text of the statutory factors. See 18 U.S.C. § 3553(a)(2)(A)-(C). Although the court did, at one point, describe its sentence as "a departure," the court's terminology does not necessarily determine the nature of the deviation from the Guidelines. See United States

v. <u>Nelson</u>, 793 F.3d 202, 206-07 (1st Cir. 2015) (concluding that the district court imposed a "variance" when it justified its above-Guidelines sentence based on the § 3553(a) factors, even though the court used the word "depart" in the sentencing hearing).

Because the district court imposed a "variance," not a departure, it did not violate Rule 32(h).[14] Tirado-Nieves does not argue that he was entitled to notice of the court's intent to impose a variant sentence on some other basis. Accordingly, we reject his claim of procedural error.

Having found no basis to disturb the sentencing judgment of the district court, we affirm the sentence it imposed.

<u>So ordered.</u>

---

[14] Of course, as we have observed, the distinction between departures and variances in post-<u>Booker</u> sentencing may be, "[f]or practical purposes," simply a matter of nomenclature. <u>See</u> <u>United States</u> v. <u>Santini-Santiago</u>, 846 F.3d 487, 490 (1st Cir. 2017) (noting the difficulty of "identify[ing] any movement away from the applicable guidelines sentencing range that can be justified as a departure but not as a variance"). Nonetheless, here, as we have explained, the court clearly imposed a variance because it did not invoke any Guidelines provision as the basis for its "movement away from the applicable" range. <u>Id.</u>