**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————————

No. 21-1709

———————————

UNITED STATES OF AMERICA

v.

ANTHONY DIAZ,
                                    Appellant

———————————

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 3:16-cr-00122-001)
U.S. District Judge: Honorable Malachy E. Mannion

———————————

Submitted Under Third Circuit L.A.R. 34.1(a)
on March 21, 2022

Before: BIBAS, MATEY, and PHIPPS, *Circuit Judges*

(Filed: September 19, 2022)

———————————

OPINION*

———————————

**BIBAS**, *Circuit Judge*.

On appeal, parties sometimes throw everything against the wall to see what sticks. Here, nothing does. Anthony Diaz challenges his federal convictions and sentence for mail and wire fraud. Because none of his arguments has merit, we will affirm.

———————————

* This disposition is not an opinion of the full Court and, under I.O.P. 5.7, is not binding precedent.

# I. THE INVESTMENT-FRAUD SCHEME

Diaz was a financial planner. His clients were ordinary people who wanted to save for retirement or their kids' educations. Diaz promised to put their money into safe investments. Instead, he chose risky ones that netted him higher commissions. When those investments tanked, Diaz's clients lost lots of money. Those losses forced many to delay retirement. Some had to sell their homes. Meanwhile, Diaz took exotic vacations, built a pool, and drove a Jaguar.

Diaz's scheme was complex. Many of the investments he chose were so risky that ordinary people, like his clients, are barred from them. So he tricked his clients into signing blank documents and then forged their information to make them look qualified. One client was on unemployment, getting about $400 per week. Diaz wrote that her annual income was $102,000.

Diaz's lies kept things going for close to a decade. Several companies fired him. Each time, Diaz told his clients that he had left for their benefit. Regulatory agencies started investigating him, and a professional organization for financial planners suspended him. Again, Diaz lied or said nothing to his clients.

Finally, the jig was up. The jury convicted him of seven counts of wire fraud and four of mail fraud, and the judge sentenced him to 17 ½ years in prison. On appeal, he challenges both his conviction and his sentencing. We review

- the District Court's factual findings for clear error, with particular deference to its credibility findings;
- its application of the statutory sentencing factors to the facts with deference;

- its legal reading of the rules of evidence and sentencing guidelines de novo;

- its rulings on evidentiary objections and the sentence's procedural and substantive reasonableness for abuse of discretion; and

- errors to which Diaz did not object for plain error.

*United States v. Igbonwa*, 120 F.3d 437, 440–41 (3d Cir. 1997) (factual findings); *United States v. Tomko*, 562 F.3d 558, 567–68 (3d Cir. 2009) (en banc) (application of sentencing factors; sentence's procedural and substantive reasonableness); *United States v. Bailey*, 840 F.3d 99, 117, 126–27 (3d Cir. 2016) (legal reading of evidence rules; evidentiary objections); *United States v. West*, 643 F.3d 102, 105 (3d Cir. 2011) (legal reading of sentencing guidelines); *United States v. Brennan*, 326 F.3d 176, 182 (3d Cir. 2003) (non-contemporaneous objections).

## II. AT TRIAL, THE COURT PROPERLY ADMITTED THE EVIDENCE AND STATEMENTS

Diaz objects that the District Court admitted evidence about his firings, suspension, and disbarment, plus some testimony from his assistant. He also challenges two statements in the prosecution's closing argument.

Before taking those arguments one by one, we address a premise that recurs throughout his briefs. Diaz says he was charged with "individual counts" of mail and wire fraud, not a scheme to defraud. Reply Br. 4–5. Each count is tied to a particular wire or mailing on a particular date. So, he says, only evidence that relates directly to these wires and mailings is admissible.

That is wrong. The existence of a scheme to defraud is *one of the elements of* mail and wire fraud. 18 U.S.C. §§ 1341, 1343. So the government had to prove an overarching

3

scheme, and any evidence showing it was admissible. Of course, the government also had to show that Diaz used wires or mailings to execute that scheme. *Id.* (both sections). But when proving the overarching scheme, the dates of those wires and mailings are "not of any legal significance." *United States v. Pharis*, 298 F.3d 228, 233–34 (3d Cir. 2002) (en banc).

With that in mind, we turn to Diaz's individual arguments.

## A. The trial court properly admitted evidence of past disciplinary actions

Diaz's fraud was noticed. He was investigated, fired, suspended, and disbarred. At trial, the District Court admitted evidence of those disciplinary actions. Though Diaz protests, that evidence was admissible as intrinsic to the charged offenses—it went straight to proving his fraud. *See United States v. Green*, 617 F.3d 233, 248–49 (3d Cir. 2010).

The government introduced evidence of the investigations, firings, and suspensions to show that Diaz had concealed them from his clients. If they had known that he had been investigated or disciplined, they would not have kept investing with him. So the evidence proved his "scheme … for obtaining money … by means of false or fraudulent pretenses." 18 U.S.C. §§ 1341, 1343. The same is true of the evidence about *why* he was investigated and disciplined. He lied to his clients about that, presumably because telling the truth would have driven them away. And all this concealment and deception showed his intent to deceive: Diaz was told that his actions were problematic but carried on anyway.

Diaz objects that the evidence was far more prejudicial than probative. But the District Court reasonably balanced the two and found otherwise. The evidence showed that his lies were intentional and material. Plus, the court repeatedly instructed the jury not to use

4

evidence of investigations or discipline as proof that he had committed the crimes charged here.

As for the evidence of the disbarments, Diaz elicited that testimony himself. And the invited-error doctrine bars him from challenging any error that he introduced. *United States v. Maury*, 695 F.3d 227, 256–57 (3d Cir. 2012).

Finally, Diaz challenges a smattering of statements elicited at trial: about how he treated his clients; about signed, blank forms found during an employer's investigation; and about events that were investigated but did not result in discipline. But at trial, Diaz never specifically objected to those statements. So he forfeited his claims. We see no error, let alone plain error.

## B. The trial court properly admitted the testimony of Diaz's assistant

Next, Diaz challenges the testimony of his former assistant. During trial, she told the government for the first time that, after she and Diaz learned they were being investigated by a regulatory agency, they had altered and destroyed documents. The government promptly told the defense and the court. Over Diaz's objections, the court let her testify about these events.

Diaz now says that a witness should not be allowed to testify about things that she never before told either party. But no rule bars such testimony. Indeed, at trial, Diaz conceded as much. He says he needed more time to investigate her late-breaking statement. But the District Court offered to discuss a continuance. Yet he did not take the court up on its offer. And he never explains what he would have done with extra time to prepare.

5

Lastly, this testimony showed not uncharged bad acts but acts intrinsic to mail and wire fraud. By altering documents, Diaz was able to avoid detection and keep defrauding his clients. *See Green*, 617 F.3d at 249 ("[A]cts performed contemporaneously with the charged crime may be termed intrinsic if they facilitate the commission of the charged crime." (quoting *United States v. Bowie*, 232 F.3d 923, 929 (D.C. Cir. 2000)).

## C. The prosecution's closing argument properly noted intrinsic evidence

In addition, Diaz challenges two of the government's closing statements. First, the government said that "[e]very victim testified that Anthony Diaz never told them he was suspended by" a professional organization. App. 2126. Second, it argued that if Diaz's clients had known that a regulatory agency was suing him, they would likely have invested differently. Diaz objects that the suspension and lawsuit postdated some of his wires and mailings, and he could not have concealed something that had not happened yet. But once again, this evidence was intrinsic to the overall scheme to defraud and suggests both materiality and his intent.

In any event, any error would have been harmless beyond a reasonable doubt. These were only two sentences out of forty-four pages. The court twice instructed the jury that lawyers' arguments are "not evidence." App. 2087, 2089. And the evidence of guilt was overwhelming, including forged documents and testimony of several employees plus more than ten clients.

### III. DIAZ'S SENTENCE WAS PROPER

So we move on to sentencing. Diaz challenges five sentencing enhancements and his sentence's substantive reasonableness. But all these were proper.

**A. All five sentencing enhancements were proper**

First, Diaz challenges his six-level enhancement for substantially financially harming at least twenty-five victims. U.S.S.G. §2B1.1(b)(2)(C). Though the court did not name specific victims, it was entitled to "draw reasonable inferences from the factual record." *United States v. Poulson*, 871 F.3d 261, 269 (3d Cir. 2017). More than ten victims testified at trial to suffering financial hardship. Some had spouses. Another victim testified at sentencing. And twenty-nine more submitted victim-impact statements. Diaz claims that thirteen of these victims did not suffer any hardship. But even knocking out those thirteen still leaves more than twenty-five.

Diaz also challenges his two-level enhancement for using sophisticated means. U.S.S.G. §2B1.1(b)(10)(C). He is right that fraud necessarily involves lying, so lying cannot always count as a sophisticated means of committing fraud. But Diaz lied in a particularly sophisticated way. He persuaded his many clients to sign blank documents, then forged their information and sent the documents to supervisors and regulators. Those forgeries helped him sidestep regulatory restrictions and evade detection. His long-term, multi-step scheme was more complex than typical mail or wire fraud. *See United States v. Fountain*, 792 F.3d 310, 319 (3d Cir. 2015) (listing "the duration of a scheme … and efforts to avoid detection" as relevant factors).

Next, Diaz objects to his four-level enhancement for violating a securities law. U.S.S.G. §2B1.1(b)(20)(A). He says he was convicted only of mail and wire fraud, not securities fraud. But as long as the sentencing judge does not exceed the maximum sentence, he may find facts that increase sentences. *Apprendi v. New Jersey*, 530 U.S. 466, 481 (2000). This is true even if those facts amount to a "separate offense." *United States v. Grier*, 475 F.3d 556, 565–68 (3d Cir. 2007).

In addition, Diaz challenges his two-level enhancement for being a leader or manager in the crime. U.S.S.G. §3B1.1(c). He attacks the sentencing court's reliance on his assistant's testimony, arguing that she was his bitter ex-girlfriend and had changed her story. But the District Court did not clearly err in crediting her testimony, particularly because other employees' testimony corroborated it.

Finally, Diaz attacks his two-level enhancement for obstructing justice. U.S.S.G. §3C1.1. But the court did not clearly err in finding that Diaz had "lied through his teeth" at trial. App. 2253. Although Diaz protests that the court burdened his constitutional right to testify, that right "does not include a right to commit perjury." *United States v. Dunnigan*, 507 U.S. 87, 96 (1993).

**B. Diaz's sentence is substantively reasonable**

The District Court correctly calculated Diaz's guidelines range and followed proper procedures. So we must affirm his sentence as substantively reasonable "unless no reasonable sentencing court would have imposed" it. *Tomko*, 562 F.3d at 568. Here, the District Court discussed the egregiousness of Diaz's crime, the length of his rap sheet, the number of victims severely harmed, and the other 18 U.S.C. §3553(a) factors. Though Diaz

8

rehashes the arguments he made below, the sentencing court reasonably rejected them. And far from being harsh, it sentenced him more than four years below the advisory guidelines range. That sentence was reasonable, indeed lenient.

* * * * *

Diaz objects to a flurry of evidentiary and sentencing rulings. But the District Court treated each one with care, ruled reasonably, and sentenced leniently. Finding no error, we will affirm.